## S12G2031. NORFOLK SOUTHERN RAILWAY COMPANY v. ZEAGLER.

(748 SE2d 846)

Nahmias, Justice.

The plaintiff in this case, William Zeagler, was a train conductor employed by the defendant Norfolk Southern Railway Company ("Norfolk Southern"). Zeagler was injured when the train on which he was working collided with a logging truck at a grade crossing. He sued Norfolk Southern under the Federal Employers' Liability Act ("FELA"), 45 USC § 51 et seq., claiming that the railroad negligently failed to train him on how to avoid or mitigate injury in the event of a grade-crossing collision. The trial court granted summary judgment to Norfolk Southern after concluding that the railroad had no duty to train its employees on what to do when a grade-crossing collision is imminent. The Court of Appeals reversed that judgment, see *Zeagler v. Norfolk Southern Railway Co.*, 317 Ga. App. 302 (730 SE2d 657) (2012), and this Court granted certiorari to consider two questions: (1) whether the Court of Appeals erred in reversing the trial court's order granting summary judgment in favor of Norfolk Southern; and (2) whether Zeagler's failure-to-train claim is preempted or precluded by Federal Railroad Administration regulations.

We conclude that the answer to both questions is no. First, the Court of Appeals did not err in reversing the trial court's summary judgment order. Under FELA, Norfolk Southern has a legal duty to use reasonable care in providing a safe workplace for its employees, which includes providing them with such training as is reasonable regarding how to avoid or reduce injury from reasonably foreseeable workplace hazards. It is undisputed that grade-crossing accidents are entirely foreseeable workplace hazards for train conductors, and thus Norfolk Southern had a duty to provide Zeagler with whatever training is reasonably appropriate to protect him from injury in such accidents.

As to whether that duty was breached and whether any breach caused Zeagler's injuries, it may turn out that, as Norfolk Southern argues, there is no reasonable training for train conductors that can avoid or mitigate injuries from the many different varieties of grade-crossing accidents, or that Norfolk Southern provided Zeagler with whatever basic direction is reasonably required, or that the training that is reasonable would not have prevented or mitigated Zeagler's injuries. In opposing Norfolk Southern's summary judgment motion, however, Zeagler offered evidence to the contrary, including evidence from expert witnesses that Norfolk Southern's training in this area does not meet the standard of care and that appropriate training would have at least mitigated Zeagler's injuries. Although the Court

of Appeals' opinion confused the legal and factual elements of a FELA negligence claim to some extent, as we explain in Division 2 below, the court reached the right result, concluding that the genuine issues of material fact regarding breach and causation preclude summary judgment and need to be resolved by trial.

Second, as we explain in Division 3 below, Zeagler's failure-to-train claim is neither preempted nor precluded. Zeagler brings his claim under FELA, which is a federal statute that cannot be "preempted" by another federal law. Nor is his claim precluded by Federal Railroad Administration regulations. We need not decide whether and precisely how the doctrine of preclusion applies in this context, because Norfolk Southern has not identified any regulation that "substantially subsumes" the subject matter of the failure-to-train claim that Zeagler raises under FELA, much less any regulation that is in "intolerable conflict" with his claim. We therefore affirm the judgment of the Court of Appeals.

1. (a) Summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c). "On appeal from the grant of summary judgment, we construe the evidence most favorably towards the nonmoving party, who is given the benefit of all reasonable doubts and possible inferences." *Ansley v. Raczka-Long*, 293 Ga. 138, 140 (744 SE2d 55) (2013). And because summary judgment is a matter of law, we review the issue de novo. See *Inagawa v. Fayette County*, 291 Ga. 715, 715 (732 SE2d 421) (2012). In this case, Norfolk Southern was the party that moved for summary judgment, so we consider the evidence in the record in the light most favorable to Zeagler, drawing all reasonable inferences in his favor. Doing so, the record shows as follows.

(b) On July 23, 2007, William Zeagler was 55 years old and had been an employee of Norfolk Southern and its predecessor for 33 years. Zeagler was working that afternoon as the conductor on a train operated by Norfolk Southern. As the train approached a point in Dodge County where the tracks run across a road, the crew took some safety precautions for such a grade crossing: obeying Norfolk Southern's self-imposed speed restriction of 35 miles per hour, blaring the horn, ringing the engine bells, burning the headlight on bright, and flashing the ditch lights on and off. The engineer and the brake operator stood in the front of the locomotive cabin keeping a lookout ahead, while Zeagler stood in the middle of the cabin speaking to the dispatcher on the radio.

As the train neared the road, the engineer and the brakeman saw a loaded logging truck slowly approach the crossing. When the engineer realized that the truck was not stopping, he engaged the emergency brake, but the train was too close to the crossing to avoid a crash. The train slammed into the center of the truck's log-filled trailer, killing the driver and wrapping the truck around the front of the locomotive. The logs in the trailer whipped into the train, crushing inward part of the front right side of the locomotive cabin. The train's first four cars derailed and ground to a halt.

In the moments before the collision, Zeagler panicked. While the engineer dropped down and braced for the impact, both Zeagler and the brakeman ran toward the cabin's back door in an attempt to jump out of the train, but neither employee made it before the train slammed into the truck. Because Zeagler was upright and moving, rather than braced for impact, the force of the collision threw him toward the back of the cabin. He tripped over the brakeman, who had fallen down, struck his lower back on the corner of the brakeman's equipment case ("grip"), and fell to the floor. As the train derailed, Zeagler bounced up and down on the floor, striking his tailbone three or four times. He sustained injuries in the crash that resulted in chronic back pain, post-traumatic stress disorder, and depression. He has not returned to work for Norfolk Southern.

This was not the first grade-crossing accident Zeagler had been in, nor are such accidents a rarity for Norfolk Southern or other railroad companies. According to Norfolk Southern's records, the company's trains were involved in about 2,500 grade-crossing collisions between 2003 and 2007 — an average of more than one per day — and employees were frequently injured in those collisions. Despite the frequency of these accidents, Norfolk Southern provided no rules or instructions to Zeagler and other employees pertaining to such collisions.

(c) On June 27, 2008, Zeagler filed a complaint in the Superior Court of Bibb County, alleging negligence claims against Norfolk Southern under FELA.[1] Zeagler alleged that Norfolk Southern had negligently required him to work on a locomotive without ever training him on how to protect himself in the event of a grade-crossing collision.[2] Norfolk Southern moved for summary judgment, arguing,

---

[1] The complaint also alleged state-law negligence claims against the deceased truck driver's estate and insurance company. Those claims were dismissed after Zeagler settled for the limits of the driver's insurance policy. The driver, who tested positive for marijuana in his autopsy, had failed to stop at the crossing's stop sign.

[2] Zeagler also claimed that Norfolk Southern was negligent based on its failure to make the locomotive cabin crashworthy by installing safety devices such as seatbelts, handholds, and

among other things, that the railroad had no duty to provide that kind of training and that there was no causal connection between the lack of training and Zeagler's injuries. Zeagler responded by citing, among other things, affidavits and deposition testimony from his three expert witnesses; Norfolk Southern did not challenge the qualifications of these witnesses or the admissibility of their testimony.

First, John Ambrose, a retired Norfolk Southern trainmaster[3] who had investigated some 75 grade-crossing collisions, testified that Norfolk Southern should have designed an employee-training program to maximize safety in crossing collisions. Ambrose explained that, in nearly every crossing collision, it is safer for the crew to stay in the locomotive cabin's interior rather than try to leap out. Thus, Ambrose concluded, with proper training, Zeagler would not have attempted to jump from the train before the collision. Instead, he would have braced for the impact, staying in his seat and bending down below window level, and that would have prevented him from striking his lower back on the brakeman's grip and then repeatedly bouncing on his tailbone. Second, Dr. Marc Wilson, an ergonomist, testified that training for emergency procedures reduces panic in actual emergencies. Dr. Wilson also concluded that if Zeagler had been properly trained in collision safety, he would not have attempted to flee but instead would have assumed a safe, braced position that reduced his risk of injury. Finally, Dr. Andrew Hurayt, Zeagler's treating psychiatrist, opined that the lack of training increased Zeagler's trauma during the accident and thus contributed to his post-traumatic stress disorder.

The trial court granted summary judgment to Norfolk Southern, concluding that the railroad had no duty to provide its employees with any specific safety training regarding what to do in the event of a grade-crossing accident and declining to impose such a duty where Zeagler "has been unable to demonstrate that this training would have actually helped" him avoid his injuries. Zeagler appealed, and the Court of Appeals reversed, pointing out that the trial court had confused the legal question of duty with the factual question of causation. See *Zeagler*, 317 Ga. App. at 303. The Court of Appeals concluded that Norfolk Southern did have a duty of care under FELA to protect employees from reasonably foreseeable mishaps, and that Zeagler had presented evidence raising a genuine issue of material

---

padding. The trial court granted summary judgment to Norfolk Southern on this claim, and Zeagler did not appeal that part of the trial court's order. See *Zeagler*, 317 Ga. App. at 303. Our review is therefore limited to his failure-to-train claim.

[3] A trainmaster has "the supervisory duty to see that all operating and other rules were complied with by the train crew." *Louisiana & Arkansas Ry. Co. v. Moore*, 229 F2d 1, 2 (5th Cir. 1956).

fact on his failure-to-train claim related to the foreseeable occurrence of grade-crossing collisions. See id. at 304-309.

This Court then granted Norfolk Southern's petition for certiorari.

2. Regarding the first question we posed in granting certiorari, we conclude that the Court of Appeals did not err in reversing the trial court's order granting summary judgment to Norfolk Southern. However, the Court of Appeals' explanation of the elements of a FELA claim was not entirely accurate.

The Federal Employers' Liability Act is a federal statute that gives a railroad employee the right to sue his employer in state or federal court for "injury or death resulting in whole or in part from [the railroad company's] negligence." 45 USC § 51. See also 45 USC § 56 (specifying the federal and state courts where plaintiffs may file claims). To bring a claim under FELA, "a plaintiff must 'prove the traditional common law elements of negligence: duty, breach, foreseeability, and causation.'" *Bagley v. CSX Transp., Inc.*, 219 Ga. App. 544, 544 (465 SE2d 706) (1995) (citation and punctuation omitted). See also *Consolidated Rail Corp. v. Gottshall*, 512 U. S. 532, 540 (114 SCt 2396, 129 LE2d 427) (1994) (quoting the Third Circuit's statement that, under FELA, courts "'should apply the traditional negligence elements of duty, foreseeability, breach, and causation'" (citation omitted)). While these four elements are related, each is a distinct component of a FELA claim, and maintaining the distinctions among them is important to proper application of the summary judgment standard in FELA cases, for two reasons.

The first reason is that these elements define the province of the judge and the jury in a FELA lawsuit. Whether the defendant has a *duty* to the plaintiff is a question of law to be decided by the court. See *Everett v. Norfolk Southern Railway Co.*, 292 Ga. 106, 108 (734 SE2d 388) (2012) (collecting cases). The other three elements — *foreseeability*, *breach*, and *causation* — are questions of fact to be decided by a jury, assuming that there is evidence in the record creating a genuine issue for trial. See *Gallick v. Baltimore & Ohio R. Co.*, 372 U. S. 108, 117-119 (83 SCt 659, 9 LE2d 618) (1963) (holding that "reasonable foreseeability of harm is an essential ingredient of [FELA] negligence" and that it is determined by "the jury's findings"); *CSX Transp., Inc. v. McBride*, ___ U. S. ___ (131 SCt 2630, 2643, 180 LE2d 637) (2011) (holding that the jury must determine whether the defendant "'fail[ed] to observe that degree of care which people of ordinary prudence and sagacity would use under the same or similar circumstances'" (citation omitted)); *Tennant v. Peoria & Pekin Union R. Co.*, 321 U. S. 29, 30 (64 SCt 409, 88 LE 520) (1944) (emphasizing the plaintiff's "right to a jury determination of the issue of causation"). Thus, at the summary judgment stage, keeping the legal

question of duty distinct from the factual questions of foreseeability, breach, and causation is essential to ensure that the court does not inappropriately decide factual issues that should be submitted to the jury.[4] See *Wilkerson v. McCarthy*, 336 U. S. 53, 55 (69 SCt 413, 93 LE 497) (1949) (emphasizing "the importance of preserving for litigants in FELA cases their right to a jury trial").

The second reason that maintaining the distinctions among the four elements is important is because FELA sets different substantive standards for those elements. These standards determine what facts are "material" to the particular element and thus dictate what the moving party must establish without genuine dispute to be entitled to judgment as a matter of law. See *Raven v. Dodd's Auto Sales & Svc., Inc.*, 117 Ga. App. 416, 420 (160 SE2d 633) (1968). See also *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 248 (106 SCt 2505, 91 LE2d 202) (1986) ("[T]he substantive law will identify which facts are material."). For example, FELA has a relaxed negligence per se standard, which makes it easier for a FELA plaintiff to survive summary judgment than for a plaintiff bringing a common-law negligence claim. See *Gottshall*, 512 U. S. at 543. Most relevant here, FELA has a relaxed causation standard, requiring that the issue of causation go to the jury whenever "the proofs justify with reason the conclusion that employer negligence played *any part, even the slightest*, in producing the injury or death for which damages are sought." *Rogers v. Missouri Pacific R. Co.*, 352 U. S. 500, 506 (77 SCt 443, 1 LE2d 493) (1957) (emphasis added).

Because it is important to distinguish among the FELA cause-of-action elements, we will discuss each element separately as it applies to this case. We note, however, as did the Court of Appeals, that these terms as used "in ascertaining coverage under FELA may impart a slightly different meaning, or at least a different emphasis, than their traditional meaning in Georgia tort law." *Zeagler*, 317 Ga. App. at 303.

(a) ***Duty***: Under FELA, "[a] railroad has a duty to use reasonable care in furnishing its employees with a safe place to work." *Atchison,*

---

[4] That duty is ultimately a question of law does not mean that the resolution of issues involving the existence of a particular duty cannot rest on subsidiary factual determinations submitted to the jury, as explained by Judge Doyle in her dissent in *Norfolk Southern Railway Co. v. Everett*, 313 Ga. App. 345, 353 & n.10 (721 SE2d 591) (2011) (Doyle, J., dissenting). See *Everett v. Norfolk S. R. Co.*, 292 Ga. 106, 108 (734 SE2d 388) (2012) (citing Judge Doyle's dissent). See also *Atchison, Topeka & Santa Fe R. Co. v. Buell*, 480 U. S. 557, 568 (107 SCt 1410, 94 LE2d 563) (1987) (recognizing that some duty issues may "not necessarily [turn on] an abstract point of law or a pure question of statutory construction that might be answerable without exacting scrutiny of the facts of the case").

*Topeka & Santa Fe Railway Co. v. Buell*, 480 U. S. 557, 558 (107 SCt 1410, 94 LE2d 563) (1987). The enactment of FELA to "give[ ] force" to this duty, id., was no small thing. By the end of the Nineteenth Century, common law doctrines effectively barred recovery in negligence by railroad employees, despite "the physical dangers of railroading that resulted in the death or maiming of thousands of workers every year." *Gottshall*, 512 U. S. at 542. Congress enacted FELA in 1908 as one of the first federal workplace safety laws, creating "a federal remedy that shifted part of the ' "human overhead" ' of doing business from employees to their employers." Id. (citation omitted). See also *Wilkerson*, 336 U. S. at 68 (Douglas, J., concurring) (noting that FELA "was designed to put on the railroad industry some of the cost for the legs, eyes, arms, and lives which it consumed in its operations").

A railroad's duty to provide a safe workplace for its employees requires it to exercise the care that "a reasonable and prudent person would [exercise] under the same circumstances." *Wilkerson*, 336 U. S. at 61. Whether the railroad breached that duty in a given case by failing to act with the " 'degree of care' " required in a specific situation is a separate question. *McBride*, 131 SCt at 2643 (quoting *Gallick*, 372 U. S. at 118).

The degree of ordinary care that a railroad is required to use to protect its employees against workplace hazards may include training that alerts employees to workplace hazards and instructs them on how to avoid or reduce injury from such hazards. See, e.g., *Marmo v. Chicago, Rock Island & Pacific R. Co.*, 350 F2d 236, 238-239 (7th Cir. 1965) (finding a duty to train an employee to safely inspect a misalignment of the castings connecting two cars); *Phillips v. Chesapeake & Ohio R. Co.*, 475 F2d 22, 24 (4th Cir. 1973) (recognizing a duty "to train [an employee] how to work safely as a brakeman"); *Hoover v. Burlington Northern R. Co.*, 559 NW2d 729, 734 (Neb. 1997) (holding that the issue of whether the railroad breached its duty to provide the plaintiff "with proper training to do his job safely" was properly submitted to the jury). There is no principled basis for exempting, as a matter of law, grade-crossing collisions from other workplace hazards that railroads must address when providing safety training to their employees as a component of the duty of care established by FELA. FELA's primary focus is "injuries and death resulting from accidents on interstate railroads," *Urie v. Thompson*, 337 U. S. 163, 181 (69 SCt 1018, 93 LE 1282) (1949), and as discussed further below, it is undisputed that grade-crossing accidents occur on interstate railroads on a daily basis, with injuries frequently resulting. In short, grade-crossing accidents are undeniably a serious workplace danger for train conductors like Zeagler, and the railroad's

legal duty under FELA may require it to provide to employees such training as is reasonable to avoid such accidents and minimize injuries when they occur. Whether Norfolk Southern breached that duty, and whether that breach caused Zeagler's injuries, are separate questions controlled by the facts of the case.[5]

The trial court failed to appreciate these distinctions, co-opting elements of breach in reaching its conclusion that Norfolk Southern owed no duty to Zeagler. The court concluded that Zeagler's expert-witness evidence did not establish that Norfolk Southern should "teach its employees to assume a 'seated and braced position' in the face of a collision." But what particular action a railroad should take to address a given workplace hazard is a question of whether the railroad breached the standard of care, not whether a duty to act existed in the first place. See, e.g., *McBride*, 131 SCt at 2643; *Wilkerson*, 336 U. S. at 60-61.

Norfolk Southern cites five cases that it says support the trial court's conclusion that railroads have "no duty to provide specific emergency training [for grade-crossing accidents]." None of those cases, however, actually holds that railroads have no duty of care when it comes to safety training for grade-crossing accidents.

In two of the cases, the court assumed that a duty to provide such safety training *does* exist and then granted summary judgment to the railroad on the ground that the evidence did not establish a breach of that duty. In *Sindoni v. Consolidated Rail Corp.*, 4 FSupp.2d 358 (M.D. Pa. 1996), the district court assumed that there was a duty "to adequately instruct [the plaintiff employee] on procedures to be implemented by Plaintiff to protect himself in an imminent [grade-crossing] crash situation." Id. at 366. The court then granted summary judgment on the issue of breach, concluding that the plaintiff had "failed to provide any affirmative evidence suggesting that [the railroad's] instruction[s] to lie down and not jump off the train were negligent." Id.[6] Similarly, in *Dickerson v. Staten Trucking, Inc.*, 428 FSupp.2d 909 (E.D. Ark. 2006), the district court recognized the

---

[5] Indeed, it is apparent that Norfolk Southern recognizes, and has taken a variety of steps to deal with, the dangers posed by grade-crossing accidents, including requiring crews to lower the train's speed to 35 miles per hour, blare the horn, ring the engine bells, burn the headlight on bright, and flash the ditch lights on and off as the train approaches a crossing. Norfolk Southern and its amicus argue that these and other measures have greatly reduced the number of such accidents, and that the railroad has thereby satisfied its duty under FELA. But whether that is so, or whether the standard of care requires Norfolk Southern to include employee training as a component of its safety measures, is a question for the jury.

[6] We note that the training provided by the defendant railroad in *Sindoni* is essentially the same training (assume a braced position clear of the cabin windows when a crash is imminent) that Zeagler's experts say is the applicable standard of care. See *Sindoni*, 4 FSupp.2d at 366.

railroad's "general duty to train its employees" before holding that the railroad "did not breach its duty to train by failing to instruct its employees to utilize common sense or to avoid panicking when faced with an imminent locomotive collision." Id. at 914-915. Thus, neither *Sindoni* nor *Dickerson* conflicts with our holding in this case. Their different results simply reflect the failure of the plaintiffs in those cases to produce evidence raising a genuine issue for trial on the factual, breach-of-duty element of their FELA failure-to-train claims.

The other three cases cited by Norfolk Southern made the same basic mistake as the trial court in this case: wrongly incorporating breach or causation analysis in the duty determination.[7] A close reading of the opinions reveals that, while their conclusions are clothed in the language of "duty," their reasoning relies on the plaintiff's failure to present adequate evidence of either breach or causation.

The decision in *Dent v. Consolidated Rail Corp.*, 187 F3d 635, 1999 WL 551402 (6th Cir. 1999) (unpublished table decision), rested on the plaintiff's failure to establish breach of the duty of care. The court construed the plaintiff's complaint as claiming that the railroad "should have trained him so that he would have avoided anxiety and panic and avoided falling on his suitcase when faced with an impending rail crossing accident." 1999 WL 551402, at *1. While the majority proclaimed that the railroad did not have "a legal duty to offer training of this kind," it based that conclusion on the fact that the court was unaware of any training the railroad "could have offered that would be likely to avoid the situation here." Id. In other words, *Dent* reasoned that the plaintiff had not produced evidence as to what kind of training the railroad reasonably should have provided.[8] That rationale relates to the degree of care the railroad should have exercised and whether the railroad breached that standard of care. See *McBride*, 131 SCt at 2643. Indeed, in the next sentence after purportedly holding that the defendant railroad had no duty, the *Dent* majority "conclude[d] that [the railroad] did not *breach* any legal duty that it owed to plaintiff." 1999 WL 551402, at *1 (emphasis added).

The decision in *Norfolk Southern Railway Co. v. Denson*, 774 S2d 549, 557-558 (Ala. 2000), was similar. The court reversed a jury ver-

---

[7] This is not to say that the results in these cases were necessarily wrong, only that their explanation of why the railroad had no duty of care is erroneous. The results may be correct based on lack of evidence establishing breach or causation.

[8] The majority did not explain why the expert testimony that the plaintiff presented at trial, which opined that the plaintiff would not have panicked and injured himself if the railroad had developed an "emergency plan" and drilled its employees on following that plan, and explained what such a plan should entail, was not sufficient evidence to support the jury's verdict in favor of the plaintiff. See *Dent*, 1999 WL 551402, at *2 (Nelson, J., dissenting).

dict in favor of the plaintiffs, who had been severely burned when their train struck a fuel tanker and fire entered the locomotive cabin. See id. at 550-552. In support of their claim, the plaintiffs presented testimony from an expert witness. The expert offered his opinion, however, on what crash position was best for avoiding the injuries that come from being buffeted about the cabin, like bruising and contusions, not on what crash position was best for avoiding burns from fire, which were the only injuries of which the plaintiffs complained. The plaintiffs' expert also conceded that the best position to assume depends on the kind of collision. See id. at 557. The court concluded that "there was a complete *failure of proof* as to the existence of a *duty* on the part of Norfolk Southern to instruct these plaintiffs in any manner material to this case." Id. at 558 (emphasis added). But duty is a question of law, not of evidentiary proof; thus, while framed in terms of "duty," the *Denson* court's conclusion turned on the plaintiffs' failure to prove a relevant standard for training that the railroad supposedly violated, which is a factual question about *breach* of duty. *Denson* should not be read as holding that training about grade-crossing collisions is, as a matter of law rather than of the evidence presented in that case, outside the scope of a railroad's duty under FELA to take reasonable measures to provide employees with a safe workplace.

Finally, the district court in *Miciotto v. Brown*, No. 02-CV-1485-JCZ, 2003 WL 22326559 (E.D. La. Oct. 6, 2003), confused duty with both breach and causation. The court concluded that the railroad had no "duty" to train its engineers on how to react and protect themselves in collision situations, but the court did so because the plaintiff "offered no evidence or testimony as to what training Amtrak was required to provide" (i.e., evidence of the standard of care that was breached) "that would or could have avoided his injuries" (i.e., evidence of causation). Id. at *3. Again, the sign of the court's erroneous labeling of the FELA elements was its reliance on the failure of the plaintiff's *evidence*, which goes to the factual questions of breach and causation, not the legal question of duty.

While the Court of Appeals here recognized the distinction between duty and breach, see *Zeagler*, 317 Ga. App. at 303, 306-307, at one point its opinion elided the two elements. The court said that in this case, "it is beyond argument that Norfolk Southern had a duty to protect Zeagler from crossing collisions, *if such be possible*, or at least to take steps to mitigate, *if possible*, the physical injuries which may accompany such mishaps." Id. at 304 (emphasis added). The possibility of preventing or mitigating a specific kind of injury and the feasibility of a given set of precautions are not part of the general legal question of duty. They speak instead to the factual showing necessary

to prove a breach — the degree of care that "a reasonable and prudent person would have [used] under the same circumstances" and whether the railroad's "conduct measures up" to that standard. *Wilkerson*, 336 U. S. at 61. It would have been clearer to say that Norfolk Southern had a duty of ordinary care to protect Zeagler from injury in grade-crossing collisions, but Norfolk Southern would not be in breach of that duty unless Zeagler could prove his claim that it was reasonably possible for the railroad to prevent or mitigate employees' injuries in such accidents through training. Or as the Court of Appeals correctly made the point later in its opinion, there would be "no *breach* if the [training] course was not feasible." *Zeagler*, 317 Ga. App. at 308 (emphasis added).

(b) *Foreseeability*: A plaintiff suing under FELA must also establish the "reasonable foreseeability of harm." *Gallick*, 372 U. S. at 117. The Court of Appeals mistakenly treated foreseeability as if it were a component of the duty inquiry and thus a question of law. See *Zeagler*, 317 Ga. App. at 304 ("Analyzing a FELA claim to decide whether a railroad owed a duty to the claimant employee to protect him or her from the particular event sued for requires consideration of foreseeability."). The United States Supreme Court's recent decision in *McBride*, however, clarifies that foreseeability is a factual question distinct from the initial legal determination of duty. Like breach, foreseeability is part of the jury's negligence determination, relating to whether the railroad's duty to use reasonable care to provide its employees with a safe workplace was satisfied, not whether such a duty existed at all. As *McBride* explains:

> "[R]easonable foreseeability of harm," we clarified in *Gallick*, is indeed "an essential ingredient of [FELA] *negligence*." The jury, therefore, must be asked, initially: Did the carrier "fai[l] to observe that degree of care which people of ordinary prudence and sagacity would use under the same or similar circumstances[?]" In that regard, the jury may be told that "[the railroad's] duties are measured by what is reasonably foreseeable under like circumstances." Thus, "[i]f a person has no reasonable ground to anticipate that a particular condition . . . would or might result in a mishap and injury, then the party is not required to do anything to correct [the] condition."

131 SCt at 2643 (citations omitted; emphasis in original). Thus, the foreseeability element of a FELA claim is a factual question that must be submitted to the jury as part of its negligence determination, if there is conflicting evidence on the issue.

In this case, however, given the almost daily occurrence of grade-crossing collisions between trains and motor vehicles and the detailed records that Norfolk Southern itself maintains regarding such accidents and the resulting injuries to the railroad's employees, there is no dispute as to the reasonable foreseeability of the hazard. See *Zeagler*, 317 Ga. App. at 304. Compare *Georgia Southern & Fla. R. Co. v. Peters*, 284 Ga. App. 139, 145 (643 SE2d 786) (2007) (concluding that a railroad was entitled to summary judgment on a FELA claim where there was "no evidence showing that the railroad should have reasonably foreseen that [the plaintiff employee] might be the victim of a random criminal assault at a convenience store owned by a third party"). Thus, like the Court of Appeals' slight blurring of duty and breach, the court's fusion of duty and foreseeability did not undermine its ultimate conclusion that the grant of summary judgment to Norfolk Southern was unwarranted.

(c) ***Breach***: A FELA plaintiff must establish breach by demonstrating that the railroad "fail[ed] to observe that degree of care which people of ordinary prudence and sagacity would use under the same or similar circumstances." *Gallick*, 372 U. S. at 118. Accord *Peters*, 284 Ga. at 144 (holding that the standard of care under FELA is " 'ordinary prudence under the circumstances' " (citation omitted)). Proving breach therefore requires the plaintiff to produce evidence that (1) establishes what precautions ordinary care required in the circumstances presented by his case and (2) demonstrates that the defendant did not take such reasonable precautions. Breach is, along with foreseeability of harm, part of the jury's negligence determination. See *McBride*, 131 SCt at 2643.

In this case, Norfolk Southern's expert, William Honeycutt, opined that it was "not feasible" for the railroad to develop an instruction for how train crew members should respond to grade-crossing collisions, "because the appropriate action to take depends on the circumstances which can vary from one accident to another." Based on that factual premise, the trial court accepted the railroad's argument that summary judgment was appropriate because Zeagler had not shown what "specific training would work to protect employees *each time* an accident occurs." (Emphasis added.)

But Honeycutt's opinion on the standard of care was disputed. To begin with, Zeagler's expert ergonomist, Dr. Marc Wilson, testified that "emergency procedures cannot be designed to cover every single circumstance" and instead are "designed to produce safety in most circumstances." Illustrating this point by analogy, Dr. Wilson explained that training people to wear seatbelts is a reasonable measure to promote safety in automobile collisions, even though a seatbelt does not increase passenger safety in every conceivable accident. This

testimony indicated that ordinary care does not require training that would improve train crew safety in every possible accident, only training that generally would protect employees in grade-crossing collisions.

Zeagler also presented evidence that it was feasible to design a training program to enhance crew safety in most grade-crossing collisions. His expert witness John Ambrose, the retired Norfolk Southern trainmaster, testified that "[i]n virtually every crossing collision, it is much safer to stay in the interior of the locomotive rather than attempt to leap from it." Ambrose added that Norfolk Southern "could have devised a procedure for [Zeagler] to follow, such as a standard brace position for him to assume." Indeed, Norfolk Southern's expert agreed that in most collisions, the best course of action is for the crew member to drop to the floor of the cabin and brace instead of trying to jump from the train.

Because Norfolk Southern was the party moving for summary judgment, the trial court erred in resolving this factual dispute in favor of the railroad, rather than viewing the evidence and making all reasonable inferences from it in the light most favorable to Zeagler as the non-moving party. See *Ansley*, 293 Ga. at 140. As the Court of Appeals correctly held, the evidence in the record raises a genuine issue on the material fact of whether Norfolk Southern breached its duty of ordinary care by failing to provide Zeagler with any training to reduce his risk of injury from the entirely foreseeable hazard of grade-crossing accidents. See *Zeagler*, 317 Ga. App. at 304-306.

(d) *Causation*: The causation standard for a FELA claim is extremely relaxed. See *Urie*, 337 U. S. at 181 (noting that FELA's language on causation "is as broad as could be framed"). Plaintiffs may survive summary judgment by producing evidence from which the jury could "justify with reason the conclusion that employer negligence played *any part, even the slightest*, in producing the injury or death for which damages are sought." *Rogers*, 352 U. S. at 506 (emphasis added).

Zeagler offered testimony on causation from three expert witnesses. Ambrose opined that training crew members to assume a standard brace position, instead of trying to leap from the locomotive cabin, would have prevented Zeagler from panicking and "being in a position where he would strike his lower back on the brakeman's grip, and fall over and bounce up and down on his tailbone." Dr. Wilson's affidavit offered a similar opinion. Finally, Zeagler's treating psychiatrist, Dr. Hurayt, opined that the "lack of training contributed to Zeagler's post-traumatic stress disorder following the collision" because it exacerbated his feelings of panic and helplessness when confronted

with the imminent collision. Given the low causation threshold under FELA, this evidence easily established a genuine issue for trial.

The trial court failed to properly consider this evidence, much less consider it in the light most favorable to Zeagler. See *Ansley*, 293 Ga. at 140. In granting summary judgment, the court made no mention of Dr. Wilson's or Dr. Hurayt's testimony. And the court asserted that Ambrose "was unable to speak to" whether taking a seated and braced position "would work in a majority of collisions," when, as noted above, Ambrose actually testified in his deposition that "[i]n virtually every crossing collision, it is much safer to stay in the interior of the locomotive rather than attempt to leap from it," and that "[t]he majority" of crew members involved in grade-crossing accidents "would be a[l]right" if they were trained to "just sit in their seat and just bend down below the window level" and brace themselves for impact when a grade-crossing collision is imminent.

The trial court also erred by drawing inferences from the evidence against Zeagler. See *Ansley*, 293 Ga. at 140. Thus, the court emphasized Zeagler's statement at his deposition that he would have been "cut to shreds" if he had been in his conductor's chair when the collision with the logging truck occurred, using that statement to "negate" Ambrose's opinion that Zeagler would have been safer had he taken a "seated and braced position." But it was reasonable to infer that Zeagler's statement described what he thought would have happened if he was *sitting upright* in his seat in the locomotive cabin when the logs from the truck came crashing through the windows, whereas he would not have been injured, or injured as badly, if he had done what Ambrose actually said crew members should be trained to do — remained in his seat but *ducked down below the windows* while bracing himself for impact. In fact, that is exactly what Ambrose testified would have happened when defense counsel asked him about Zeagler's "cut to shreds" statement.

Causation is related to breach. Thus, if the safety training about grade-crossing collisions that a railroad is alleged to have failed to provide (e.g., instructing crew members to stay in the cabin and brace themselves below window level) would not have prevented or mitigated the injuries the plaintiff allegedly suffered (e.g., burns from a collision with a fuel tanker), then the causation element may not be satisfied and summary judgment for the railroad may be appropriate. Cf. *Denson*, 774 S2d at 557-558. However, the fact that safety precautions that reasonably should be taken in light of a reasonably foreseeable hazard may not prevent employee injuries in every conceivable variation of that hazard does not mean that the railroad has no duty under FELA to take such precautions or that there is no causation where those reasonable precautions *would* have mitigated

the plaintiff employee's injuries — which is what the evidence has established in this case, when viewed in Zeagler's favor under the summary judgment standard of review.

(e) Turning from law to policy, Norfolk Southern asserts that this Court should reverse the Court of Appeals' decision to avoid imposing "unfathomable liability" on railroads, which will supposedly be forced to "face a jury trial every time an employee claims he was injured if training [on grade-crossing collisions] was not provided." The policy of FELA, however, cuts strongly the other way, as we have been told that this statute should be "liberally construed" in favor of injured railroad employees in order to further its "remedial goal" and "humanitarian purposes." *Gottshall*, 512 U. S. at 542-543. Taking disputed factual issues like breach and causation away from the jury and allowing them to be decided by the judge in the guise of "duty," as the trial court's order did in this case, is impermissible. As the Supreme Court of the United States declared in rejecting a similar argument that too many FELA cases would be decided by juries,

> when considering the proper tribunal for determining questions of negligence: "We see no reason, so long as the jury system is the law of the land, and the jury is made the tribunal to decide disputed questions of fact, why it should not decide such questions as these as well as others."

*Wilkerson*, 336 U. S. at 62 (citation omitted).[9]

Furthermore, we are not convinced that Norfolk Southern's assertions are accurate. To avoid summary judgment in a case like this, the plaintiff employee must establish, with competent evidence, that there was a relevant standard of care that the railroad breached, as well as the other elements of the FELA failure-to-train claim. Zeagler has managed to do that, but other plaintiffs have not, as demonstrated by the cases cited by Norfolk Southern and discussed above.

And Zeagler has prevailed only at this stage, where the evidence must be construed in his favor. At trial, Norfolk Southern may be able to convince the jury that Zeagler's experts are not credible and the kind of training that they advocate is not in fact the standard of

---

[9] See also *Bailey v. Central Vermont R., Inc.*, 319 U. S. 350, 354-355 (63 SCt 1062, 87 LE 1444) (1943) ("The right to trial by jury . . . is part and parcel of the remedy afforded railroad workers under [FELA]. Reasonable care and cause and effect are as elusive here as in other fields. But the jury has been chosen as the appropriate tribunal to apply those standards to the facts of these personal injuries. . . . To deprive these workers of the benefit of a jury trial in close or doubtful cases is to take away a goodly portion of the relief which Congress has afforded them.").

ordinary care, is not feasible, or would not have prevented his injuries. Perhaps, as Norfolk Southern argues and some judges seem to think, the only reasonable thing for a railroad to do, given the variety of grade-crossing collisions, is to advise train crew members to use their common sense. But these determinations must turn on the evidence, not on a litigant's arguments or a judge's intuitions. If Zeagler offers evidence to the contrary, the jury must make that decision, not the court. We do not share the assumption that FELA plaintiffs will always prevail, and we will not bend the law in fear that they may. See *Wilkerson*, 336 U. S. at 62 ("This assumption, that railroads are made insurers where the issue of negligence is left to the jury, is inadmissible. It rests on another assumption, this one unarticulated, that juries will invariably decide negligence questions against railroads. This is contrary to fact, as shown for illustration by other Federal Employers' Liability [Act] cases.").

In sum, the Court of Appeals correctly held that Norfolk Southern had a legal duty under FELA to provide such training as is reasonable to protect its train conductors from injury in grade-crossing accidents, which pose an indisputably foreseeable risk to train crews. Zeagler presented sufficient evidence to raise a genuine issue for trial on the other factual elements of his FELA negligence claim — breach and causation. The Court of Appeals recognized that the trial court failed to properly identify that duty and to properly evaluate the record evidence, and it therefore correctly reversed the trial court's order granting summary judgment to Norfolk Southern.

3. Norfolk Southern also argues that Zeagler's FELA failure-to-train claim is "preempted and precluded" by regulations promulgated by the Federal Railroad Authority ("FRA") pursuant to the Federal Railroad Safety Act ("FRSA").[10] Congress enacted the FRSA in 1970 to "promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 USC § 20101. Under the statute, the FRA has the authority to "prescribe regulations . . . for every area of railroad safety supplementing laws and regulations in effect on October 16, 1970," 49 USC § 20103 (a), which laws include

---

[10] Norfolk Southern raised this issue in both the trial court and the Court of Appeals. The trial court did not address the issue as to Zeagler's failure-to-train claim, presumably because the court (incorrectly) granted summary judgment to Norfolk Southern on that claim on the grounds discussed above. The Court of Appeals recognized that it could still decide the issue under the right-for-any-reason doctrine, but it exercised its discretion not to do so. See *Zeagler*, 317 Ga. App. at 309. However, because the issue was properly raised below and involves a question of law that would be dispositive of the case and is important to the public and the railroad industry, see Supreme Court Rule 40, we included it as an issue on which we granted certiorari, thereby ensuring that it would be fully briefed. We now exercise our discretion to decide it.

FELA. The FRSA also includes an express but limited state-law preemption clause, which says that "[l]aws, regulations, and orders related to railroad safety . . . shall be nationally uniform to the extent practicable." 49 USC § 20106 (a).

(a) As an initial matter, and as Norfolk Southern acknowledged at oral argument, Zeagler's FELA claim cannot be "preempted" by FRSA regulations. The preemption doctrine is a product of the Supremacy Clause, see U. S. Const., Art. VI, Cl. 2, which " 'invalidates state laws that interfere with, or are contrary to, federal law.' " *Tufariello v. Long Island R. Co.*, 458 F3d 80, 86 (2d Cir. 2006) (citation omitted). Zeagler's FELA claim, although raised in state court, is a federal cause of action governed by federal law. See 45 USC § 51; *Urie*, 377 U. S. at 174. Thus, there is no state law to preempt, and the preemption doctrine clearly does not apply. See *Saridakis v. United Airlines*, 166 F3d 1272, 1276 (9th Cir. 1999) ("The preemption doctrine per se does not govern questions relating to the compatibility of two or more federal laws."). If FRSA regulations were to bar a FELA negligence claim, it could only be under the doctrine of preclusion, which deals with the compatibility of multiple federal laws. See id.

(b) The parties both assume that the preclusion doctrine can apply here, but the law regarding preclusion of FELA claims by FRSA regulations is somewhat unsettled. See *Cowden v. BNSF Ry. Co.*, 690 F3d 884, 890 (8th Cir. 2012) (collecting cases applying different standards to determine preclusion and expressing doubt that FELA claims can be precluded at all by FRSA regulations). Norfolk Southern urges this Court to follow the approach taken by three federal circuit courts that have borrowed the test for determining whether FRSA regulations *preempt* state-law negligence claims set out by the United States Supreme Court in *CSX Transportation, Inc. v. Easterwood*, 507 U. S. 658, 663-665 (113 SCt 1732, 123 LE2d 387) (1993), to decide whether FRSA regulations *preclude* federal FELA negligence claims. See *Nickels v. Grand Trunk Western R.R., Inc.*, 560 F3d 426, 430 (6th Cir. 2009); *Lane v. R.A. Sims, Jr., Inc.*, 241 F3d 439, 443 (5th Cir. 2001); *Waymire v. Norfolk and Western Ry. Co.*, 218 F3d 773, 776 (7th Cir. 2000). See also *Cowden*, 690 F3d at 892 (assuming arguendo that *Easterwood*'s preemption test applies in the FELA preclusion context). Under this approach, Zeagler's failure-to-train claim would be precluded if Norfolk Southern established that a FRSA regulation or set of regulations " 'substantially subsume(s)' the subject matter" of the FELA claim. *Nickels*, 560 F3d at 429 (quoting *Easterwood*, 507 U. S. at 665). This is also the approach taken by our Court of Appeals. See *Norris v. Central of Ga. R. Co.*, 280 Ga. App. 792, 794-795 (635 SE2d 179) (2006). See also *Key v. Norfolk Southern Railway Co.*, 228

Ga. App. 305, 306 (491 SE2d 511) (1997) (involving a regulation issued by the FRA under the Boiler Inspection Act).

Zeagler and one of his amici, however, urge this Court to take a different approach. They argue for applying the standard set forth by the United States Supreme Court in *Atchison, Topeka & Santa Fe Railway Co. v. Buell*, 480 U. S. at 559, which addressed whether the remedial scheme created by the Railway Labor Act precluded negligence claims under FELA. See *Earwood v. Norfolk Southern Railway Co.*, 845 FSupp. 880, 885 (N.D. Ga. 1993) (applying the *Atchison* standard to determine whether a FELA claim was precluded by FRSA regulations). Under the *Atchison* standard, preclusion would apply only if the substance of Zeagler's FELA negligence claim created an "intolerable conflict" with FRSA regulations. *Atchison*, 480 U. S. at 566-567.

We need not decide in this case which of these two preclusion standards is correct, or decide the even more basic question of whether administrative regulations promulgated under the FRSA can preclude negligence claims authorized by FELA. Instead, we can simply assume that the *Easterwood*-based standard that Norfolk Southern advocates applies, because the railroad's argument fails even under that standard. See *Cowden*, 690 F3d at 892-893; *Tufariello*, 458 F3d at 86.

To prevail on its preclusion argument, Norfolk Southern needed to (at the very least) identify a particular FRSA regulation or set of regulations that "cover" the same "subject matter" as Zeagler's failure-to-train claim, not regulations that merely "touch upon" or "relate to" the substance of his claim. *Easterwood*, 507 U. S. at 664 (punctuation omitted). See also *Cowden*, 690 F3d at 892-893. The regulations that Norfolk Southern cites, however, do not cover the subject matter of Zeagler's claim, much less conflict with that claim, because none of them speak to the kind of employee safety training, if any, that railroads should provide to their conductors to guard against injuries in grade-crossing accidents.

Norfolk Southern relies primarily on 49 CFR §§ 217.4, 217.7 (a), and 217.11 (a)-(b). These regulations require railroads to file copies of their operating rules with the FRA's office in Washington, D.C., see 49 CFR § 217.7 (a), to periodically train their employees on their operating rules, see 49 CFR § 217.11 (a), and to retain copies of their instruction programs, see 49 CFR § 217.11 (b).[11] Compliance with these regulations provides the FRA with information about industry

---

[11] 49 CFR § 217.4 does not require the railroads to do or not do anything. It simply defines certain terms used in 49 CFR Part 217.

practices and ensures that railroad employees are instructed on the operating rules that their employer has chosen to adopt. See 49 CFR § 217.1 (stating the purpose of the regulations in Part 217). These regulations do not, however, require the railroads' operating rules to include any particular content, much less require or prohibit safety training for conductors regarding grade-crossing accidents. See *Union Pacific R. Co. v. Cal. Public Utilities Comm.*, 346 F3d 851, 867 (9th Cir. 2003). Indeed, when the FRA issued these regulations, the agency emphasized that they had no effect on the content of railroad operating rules and expressly reserved for future rulemaking the issue of formulating uniform operating rules. See id. (quoting 38 Fed. Reg. 12,617 (May 14, 1973)). Since the regulations that Norfolk Southern cites under Part 217 do not cover the safety training that railroads should or should not provide for their conductors regarding grade-crossing accidents (or any other workplace hazard), the regulations cannot possibly preclude Zeagler's failure-to-train claim. See *Union Pacific R. Co.*, 346 F3d at 866-867 (holding that 49 CFR §§ 217.7 – 217.11 did not preempt a state law setting track-train dynamics rules). See also *Dickerson*, 428 FSupp.2d at 914; *Jones v. BNSF R. Co.*, No. C10-05480BHS, 2012 WL 13692, at *5 (W.D. Wash. Jan. 4, 2012) ("[T]he Court is not aware of any authority that has interpreted the FRSA so broadly as to prescribe the duties of an employer to maintain a safe working environment, including providing adequate safety training or reasonably safe tools and equipment for the job.").

Norfolk seeks to bolster its reliance on the Part 217 regulations with the assertion that FRSA's purpose is to provide "national uniformity," quoting from the statute's state-law preemption provision, 49 USC § 20106 (a) (1). But cf. 49 USC § 20101 (stating that the purpose of the entire FRSA statute "is to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents"). Ironically, however, as to employee safety training, the regulations on which Norfolk Southern relies do exactly the opposite, leaving it to each individual railroad to adopt whatever operating rules it pleases and even allowing the possibility that a railroad would have no safety training rules at all. Under current law, any "national uniformity" in this area will occur through the recognition of a standard of care in cases brought under FELA — one of the federal railroad safety laws predating the FRSA that FRA regulations are supposed to "supplement[.]" 49 USC § 20103 (a). See *Cowden*, 690 F3d at 891 (noting that it is not clear how negligence claims brought under the federal common law of FELA cases, as opposed to the tort laws of the various states, threaten "the uniformity sought by the FRSA").

Norfolk Southern's citation of 49 CFR §§ 217.2 and 218.4 is equally unavailing. Those two sections are preemption provisions, saying only that the regulations set forth in their respective parts (Parts 217 and 218) will generally "preempt[ ] any *State* law, regulation, or order covering the same subject matter." (Emphasis added.) Neither provision mentions preclusion of federal laws like FELA, and neither pertains to any regulation that addresses employee safety training for grade-crossing accidents. Finally, Norfolk Southern refers generally to 49 CFR Part 240, which deals with qualifications of locomotive engineers. See 49 CFR § 240.1. But Zeagler was a conductor, not an engineer. And in any event, Norfolk Southern fails to identify any regulation in Part 240 that even touches on employee safety training for grade-crossing accidents.[12]

(c) In sum, Norfolk Southern has not shown that FRSA regulations "substantially subsume the subject matter of" Zeagler's failure-to-train FELA negligence claim, *Easterwood*, 507 U. S. at 664, much less that his claim creates an "intolerable conflict" with any FRSA regulation, *Atchison*, 480 U. S. at 566-567. We can therefore reject Norfolk Southern's preclusion claim without deciding exactly how such a claim should be analyzed. See *Tufariello*, 458 F3d at 86 (declining to decide whether a FRSA regulation on train horn volume precluded a FELA negligence action based on alleged failure to equip employees with hearing protection because the regulation and the claim addressed distinct subject matters); *Cowden*, 690 F3d at 892-894 (declining to decide what standard, if any, determines whether FELA claims should be precluded by FRSA regulations because the railroad had not identified any regulations that might justify preclusion).

*Judgment affirmed. Thompson, C. J., Hines, P. J., Benham, Hunstein, Melton, JJ., and Judge James R. Osborne concur. Blackwell, J., disqualified.*

DECIDED SEPTEMBER 23, 2013.

---

[12] The preclusion cases on which Norfolk Southern relies all involved plaintiffs whose claims fell within the subject matter of FRSA regulations. See, e.g., *Norris*, 280 Ga. App. at 795 (involving the plaintiff's claim "contesting the use of mainline ballast," where 49 CFR § 213.103 sets several standards for track ballast); *Key*, 228 Ga. App. at 306 (involving the plaintiff's claim that a train's steps were negligently constructed, where 49 CFR § 231.30 "describes in detail the construction and materials requirements for steps on locomotives"). By contrast, the regulations Norfolk Southern cites do not even share the same subject matter as Zeagler's negligent failure-to-train claim. We express no opinion on whether the cases that Norfolk Southern cites were correctly decided.

*Hall, Bloch, Garland & Meyer, John S. Stewart, Amanda R. Smith,* for appellant.

*Michael J. Warshauer, Lyle G. Warshauer, Douglas C. Dumont, Darl H. Champion, Jr.,* for appellee.

*Harp & Callier, John A. Harp, Jefferson C. Callier, Christopher R. Jordan, Randall A. Jordan, Jeffrey R. White,* amici curiae.