**SECOND DIVISION**
**RICKMAN, C. J.,**
**MILLER, P. J., PIPKIN, J.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**June 14, 2022**

# In the Court of Appeals of Georgia

A22A0414. MCCLOUD-PUE v. ATLANTA BELTLINE INC. et al.

MILLER, Presiding Judge.

This appeal concerns a property dispute over a small strip of land along an old, abandoned railway in the West End neighborhood in Atlanta that is currently being developed as part of the Atlanta BeltLine Project. Leslie McCloud-Pue, acting as the administrator of her mother Annette Cavanaugh-McCloud's estate, argues that she obtained title to the strip through adverse possession and has brought this lawsuit to quiet title to the property. On the other hand, the defendants, the entities in charge of the BeltLine project, argue that the Georgia Department of Transportation ("GDOT") properly gave them the land once the federal government officially "abandoned" the railway line in 2013 and that McCloud-Pue could not have adversely possessed the property while it was still considered a railway subject to federal regulation. We agree

with the defendants, and so we affirm the dismissal of McCloud-Pue's quiet title action.

> On appeal, we review the trial court's grant of a motion to dismiss de novo. A motion to dismiss for failure to state a claim upon which relief can be granted should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. In deciding a motion to dismiss, all pleadings are to be construed most favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the filing party's favor.

(Citation omitted.) *Mitchell v. Capehart*, 353 Ga. App. 461 (838 SE2d 125) (2020).

According to the record, Cavanaugh-McCloud purchased a tract of commercial property along Ralph David Abernathy Boulevard in Atlanta, Georgia, in 1988 that consisted of a two-story building and an adjoining parking lot. The property is located next to a former railroad right-of-way, which was previously owned by CSX Corporation. According to a boundary survey, the parking lot on the property juts out beyond the limits of her property and into the railroad right-of-way in a strip that

varies in width from around four feet to fifteen feet. The property and parking lot have been in the same configuration since the property was purchased in 1988.

The adjacent railroad right-of-way was owned by CSX until it was deeded to GDOT in 2001. In March 2012, GDOT filed a verified petition with the Surface Transportation Board (STB), seeking to declare the railroad as formally abandoned under 49 U. S. C. § 10903. In May 2012, the STB approved the application provided that GDOT (1) consult with the Georgia Environmental Protection Division regarding any hazardous material spills, contamination sites, and underground storage tanks; and (2) consult with the National Geodetic Survey at least 90 days before beginning any salvage activities that would disturb or destroy any geodetic station markers. In May 2013, GDOT informed the STB that it had complied with these requirements and that it was consummating its authority to formally abandon the railroad property. In 2014, GDOT deeded the former railroad to Invest Atlanta. Invest Atlanta and Atlanta Beltline, Inc. are currently developing the right-of-way as part of the Westside Trail portion of the Atlanta BeltLine Project.

McCloud-Pue, acting as the administrator of her mother's estate, filed a petition to quiet title to the disputed strip, alleging that she had obtained title to the strip by adverse possession under OCGA § 44-5-161 and OCGA § 44-5-163. The defendants

filed a motion to dismiss the petition for failure to state a claim or, in the alternative, a motion for judgment on the pleadings. The trial court granted the motion, concluding that McCloud-Pue's adverse possession claim was pre-empted by federal railroad law and that she could not receive any credit for the time she possessed the property until it was formally abandoned by the federal government in 2013. This appeal followed.

In her sole enumeration of error on appeal, McCloud-Pue argues that the trial court erred in concluding that the adverse possession period could not run until the railroad was formally abandoned in 2013. She specifically argues that, while she may have been pre-empted from claiming the land outright while it was subject to federal regulation, her rights under the adverse possession statute still vested during that time such that her adverse possession claim ripened once the railroad was no longer subject to federal regulation. We agree with the trial court that the time period before the railroad was abandoned did not count towards McCloud-Pue's adverse possession claim, and thus, she had no vested rights once the railroad was abandoned.

To raise a successful adverse possession claim, a plaintiff's possession of the property "(1) [m]ust be in the right of the possessor and not of another; (2) [m]ust not have originated in fraud . . . ; (3) [m]ust be public, continuous, exclusive,

4

uninterrupted, and peaceable; and (4) [m]ust be accompanied by a claim of right." OCGA § 44-5-161. Additionally, a plaintiff must show that she adversely possessed the disputed property for a total of 20 years. OCGA § 44-5-163.

"The preemption doctrine is a product of the Supremacy Clause, which invalidates state laws that interfere with, or are contrary to, federal law." (Citation omitted.) *Norfolk Southern R. Co. v. Zeagler*, 293 Ga. 582, 598 (3) (a) (748 SE2d 846) (2013). Congress has placed the power to regulate railroads with the STB (formerly known as the Interstate Commerce Commission), and it has granted the STB "broad jurisdiction over transportation by rail carriers." (Citation & punctuation omitted.) *Norfolk Southern R. Co. v. City of Alexandria*, 608 F3d 150, 157 (III) (A) (4th Cir. 2010). This power to regulate railroads derives from the Interstate Commerce Act, as modified by the Interstate Commerce Commission Termination Act of 1995 ("ICCTA"), which is "among the most pervasive and comprehensive of federal regulatory schemes and has consequently presented recurring pre-emption questions from the time of its enactment." *Chicago & North Western Transp. Co. v. Kalo Brick & Tile Co.*, 450 U. S. 311, 318 (II) (101 SCt 1124, 67 LE2d 258) (1981).

We have recognized before that "[r]ailroads are among the most heavily regulated American industries." (Citation omitted.) *Midville River Tract, LLC v.*

*Central of Ga. R. Co.*, 339 Ga. App. 546, 548 (1) (794 SE2d 192) (2016). Congress

has specifically provided the STB with exclusive jurisdiction over

> transportation by rail carriers, and the remedies provided in this part
> with respect to rates, classifications, rules (including car service,
> interchange, and other operating rules), practices, routes, services, and
> facilities of such carriers; and the construction, *acquisition,* operation,
> *abandonment,* or discontinuance *of spur, industrial, team, switching, or*
> *side tracks, or facilities*, even if the tracks are located, or intended to be
> located, entirely in one State. . . . Except as otherwise provided in this
> part, *the remedies provided under this part with respect to regulation of*
> *rail transportation are exclusive and preempt the remedies provided*
> *under Federal or State law.*

(Emphasis supplied.) 49 U. S. C. § 10501 (b). To remove a railway from the STB's

jurisdiction, federal law provides that

> [a] rail carrier providing transportation subject to the jurisdiction of the
> [Surface Transportation Board] under this part who intends to abandon
> any part of its railroad lines; or discontinue the operation of all rail
> transportation over any part of its railroad lines, must file an application
> relating thereto with the Board. An abandonment or discontinuance may
> be carried out only as authorized under this chapter.

49 U. S. C. § 10903 (a) (1). "A rail carrier providing transportation subject to the

jurisdiction of the Board under this part may abandon any part of its railroad lines;

6

or discontinue the operation of all rail transportation over any part of its railroad lines; only if the Board finds that the present or future public convenience and necessity require or permit the abandonment or discontinuance." 49 U. S. C. § 10903 (d).

> Recognizing that the STB is uniquely qualified to determine whether state law should be preempted by the ICCTA, courts have traditionally looked to STB decisions when analyzing a claim of preemption. In 2005, the Board articulated a framework for analyzing preemption claims, and under that framework, state and local laws and/or claims asserted under those laws may be preempted either categorically or as applied. A state or local law (and any action brought thereunder) is categorically preempted if the law itself or the remedy it provides "directly conflicts with exclusive federal regulation of railroads" and thereby unreasonably burdens interstate commerce. The second category of preempted state laws are those that are preempted as applied. The as-applied preemption analysis is used in those cases involving a traditional state law cause of action — i.e., a cause of action that arises under generally applicable statutory or common law that is not directed specifically at railroads or their property. In such cases, preemption occurs not because the law itself seeks to regulate railroads, but because allowing a particular state law claim to proceed would "have the effect of unreasonably burdening or interfering with rail transportation." The question of whether a state law cause of action is preempted as applied is a fact-specific one, and depends heavily on the circumstances of a particular case.

(Citations and punctuation omitted.) *Fox v. Norfolk Southern Corp.*, 342 Ga. App. 38, 55-57 (4) (b) (802 SE2d 319) (2017).

In a 2012 decision, the STB stated its position that state law adverse possession claims are categorically pre-empted by the ICCTA:

> [W]e find that Petitioners' state law adverse possession claim is federally preempted, regardless of whether this case is analyzed as "categorical" preemption (preemption that occurs when a state or local regulation is preempted on its face), or as "as applied" preemption (based on the degree of interference that a particular action would have on railroad transportation). . . . [A contrary] approach to preemption would permit landowners to carve off strips of railroad ROW [right-of-way] all over the country for non-rail use, even though the Board has not authorized the ROW to be permanently removed from the nation's rail system under Title 49. That untenable result would undermine interstate commerce and the strong federal policy in favor of retaining rail property in the national rail network, where possible. Section 10501(b) thus preempts other regulation that would unreasonably interfere with railroad operations that come within the Board's jurisdiction, without regard to whether or not the Board actively regulates the particular activity involved. The statute defines rail transportation expansively to encompass any property, facility, structure or equipment "related to the movement of passengers or property, or both, by rail, regardless of ownership or an agreement concerning use." Moreover, 49 U.S.C. § 10102 (6) defines "railroad" broadly to include track, terminal facility, ground, etc., used or necessary for transportation. The Board has

interpreted state or local regulation to include state property law claims brought by non-governmental entities, where such claims would have the effect of interfering with railroad operations.

*B & S Holdings, LLC v. BNSF Ry. Co.*, 889 FSupp2d 1252, 1257 (I) (A) (E. D. Wash. 2012) (citing *Jie Ao and Xin Zhou-Petition for Declaratory Order*, FD 35539, 2012 WL 2047726 (STB served June 6, 2012)).

Analyzing the STB's decision in light of Georgia law, we find its stance on adverse possession claims to be persuasive. In particular, we agree with the STB's reasoning that "allowing landowners to carve off strips of railroad [right-of-way] all over the country for non-rail use" would impermissibly interfere with the operations of railroads across Georgia. *B & S Holdings, LLC*, supra, 889 FSupp2d at 1257 (I) (A). Although the STB's decision in *Jie Ao and Xin Zhou* involved a case where the railroad still owned and operated the land that was sought to be adversely possessed, we conclude that the reasoning extends such that the adverse possession clock cannot run while the land is under the STB's jurisdiction. By definition, an adverse possession claim involves situations where landowners must take "exclusive" and "public" possession of the land, OCGA § 44-5-161 (3), which usually involves the prospective claimants erecting fences, structures, or other items on the property, such

9

as the parking lot in the instant case. See, e.g., *Murray v. Stone*, 283 Ga. 6 (655 SE2d 821) (2008) (successful adverse possession claim shown where claimant placed a fence, driveway, basketball hoops, and a chicken coop on the claimed piece of property). This "exclusive" and "public" possession requirement means that allowing adverse possession time to run while the land is still under the STB's jurisdiction would allow private claimants to take measures that might restrict maintenance on the railways as well as limit the railways' ability to conduct rail service. Further, although the portions of the disputed property here may not necessarily be covered with train tracks or actively used by the railroad, the United States Supreme Court has previously ruled that we must assume that the entire portion of a railway right-of-way is necessary for railway operations. See *Northern Pacific R. Co. v. Townsend*, 190 U. S. 267, 272 (23 SCt 671, 47 LEd 1044) (1903) ("Neither courts nor juries, therefore, nor the general public, may be permitted to conjecture that a portion of such right-of-way is no longer needed for the use of the railroad, and title to it has vested in whomsoever chooses to occupy the same. The whole of the granted right-of-way must be presumed to be necessary for the purposes of the railroad, as against a claim by an individual of an exclusive right of possession for private purposes.").

10

Additionally, the STB's position mirrors the reasoning that Georgia courts have applied when examining adverse possession claims against land owned by the State of Georgia. Georgia law provides that adverse possession claims cannot be made against property owned by the State, OCGA § 44-5-163, and the Supreme Court of Georgia has interpreted that law to provide that the adverse possession time does not run while the land is owned by the State, a county, or a city. *City of Marietta v. CSX Transp., Inc.*, 272 Ga. 612, 613 (533 SE2d 372) (2000). In an analogous case involving an attempt to adverse possess a road owned by a municipality, the Supreme Court of Georgia explained the reasoning underlying this principle:

> we think that adverse possession by an individual of property held by a city for the benefit and use of the whole public should not be allowed to ripen into a prescriptive title. . . . Every unauthorized encroachment upon a street, by which its use is in danger of impairment, is a public nuisance, and cannot be justified or sanctified by the lapse of time, however great. The doctrine of prescription is based on a presumption, after long-continued adverse possession, that the possession is under a grant. Where the land so held is part of a city's streets, and the city has no power to make a grant, it would seem that this presumption should not arise. Courts will not presume a grant where no grant is possible.

*Norrell v. Augusta R. & Elec. Co.*, 116 Ga. 313, 314 (2) (42 SE 466) (1902). Thus, the rationale of the Court's holding in *Norrell* consisted of two main reasons: (1)

11

adverse possession claims against public land constitute "public nuisances" by allowing private parties to limit access to lands used for the benefit of the general public; and (2) a city has no power to make a grant of such land, and so it cannot be assumed that it permissibly allowed the adverse possession to occur. Both of these reasons also apply here. Allowing adverse possession over railway land would interfere with the railway's ability to provide vital public transportation services and would thus constitute a "public nuisance." And, as discussed above, the STB has full and exclusive control over the "acquisition [or] abandonment" of railway land. 49 U. S. C. § 10501 (b) (2). Thus, we cannot simply presume that a "long-continued adverse possession" of railway land "is under a grant" without the STB's approval since the STB has exclusive control over such grants.

Accordingly, we conclude that, under the Federal pre-emption doctrine, the time period for adverse possession prescription cannot run against railway land under the STB's jurisdiction. As a result, the allegations contained within McCloud-Pue's complaint affirmatively show that she cannot maintain a valid claim to the property under OCGA §§ 44-5-161 and 44-5-163 because she cannot show valid adverse possession of the property for the requisite amount of time. We therefore affirm the trial court's dismissal of her quiet title petition.

12

*Judgment affirmed. Rickman, C. J., and Pipkin, J., concur.*