## A06A0711. NORRIS v. CENTRAL OF GEORGIA RAILROAD COMPANY.
### (635 SE2d 179)

PHIPPS, Judge.

Randall B. Norris brought this action pursuant to the Federal Employers' Liability Act (FELA).[1] He appeals the grant of partial summary judgment to Central of Georgia Railroad Company (COG). For reasons that follow, we affirm.

It is uncontroverted that on November 12, 2001, Norris was operating a railroad switch known as the number one switch located within the Millen rail yard. Switch number one connects a yard track to a mainline track. Mainline ballast is used in that area, as opposed to yard ballast, which is smaller. It is further uncontroverted that Norris deposed[2] that after throwing the switch, he was stung by a bee or a yellow jacket; that, reacting to the sting, he stumbled as ballast rolled under his foot; and that his knee was injured.

Norris alleged that COG had failed in several ways to provide him with a "safe and properly maintained track and work area." Among the ways, Norris complained that COG had used mainline ballast, but should have used smaller, yard ballast in the area where he was working. To support his claim, Norris relied upon: testimony of railroad workers that yard ballast provides for stable footing; the opinion of Don Bowden[3] that switch number one was used regularly by transportation workers, and "[a]s such, reasonable standards of care in the railroad industry demand the use of walkway sized ballast at the switch stand"; and evidence that yard ballast was used at another switch stand within the Millen rail yard.

COG moved for summary judgment on the issue whether it "was negligent for not using smaller ballast rock," asserting that it had used mainline ballast "in the area at issue" to comply with a federal regulation, that Norris could not impose some other duty regarding ballast selection upon it by way of a negligence claim under FELA, and that Norris's claim challenging its use of mainline ballast was therefore precluded. Specifically, COG cited 49 CFR § 213.103, promulgated by the Federal Railroad Administration (FRA) under the authority of the Federal Railroad Safety Act (FRSA).[4] It provides:

---

[1] 45 USCA § 51 et seq.

[2] While the parties cited to Norris's deposition in briefs filed both in this court and the trial court, the appellate record does not contain the transcript of the deposition.

[3] Bowden is a former railroad roadmaster, whose duties included providing railroad workers a reasonably safe place to work and maintaining railroad tracks in compliance with applicable federal regulations.

[4] 49 USC § 20101 et seq.

Ballast; general. Unless it is otherwise structurally supported, all track shall be supported by material which will — (a) Transmit and distribute the load of the track and railroad rolling equipment to the subgrade; (b) Restrain the track laterally, longitudinally, and vertically under dynamic loads imposed by railroad rolling equipment and thermal stress exerted by the rails; (c) Provide adequate drainage for the track; and (d) Maintain proper track crosslevel, surface and alinement.

On this issue, COG presented the testimony of James Henry, an assistant division engineer of track responsible for employee safety and also in charge of the rails, crossties, road beds, and ballast selection at Millen and numerous other rail yards. Henry explained that, although switch number one is located within the rail yard, the switch connects a yard rail with the mainline. He described switch number one as "a mainline switch" and as "a switch off the mainline." Because switch "[n]umber one is on one side of the mainline," mainline ballast was used in that location due to the "tonnage and the speed" of the trains traveling the mainline.[5] Mainline ballast was also required "around all the switches on the mainline to help provide drainage and support" for the mainline. In addition, Henry stated, yard ballast would not have "lock[ed] together enough to maintain a slope" and also would have fouled too quickly. He testified that, while yard ballast "makes a better surface to walk on" and was used in various other places within the Millen yard, had yard ballast been used "out on the mainline, I couldn't keep the track up."

Henry also testified that yard ballast could not have been used to surface the mainline ballast because the surface would have fouled too quickly and the yard ballast would have interfered with drainage. Likewise, a foreman at the Millen yard testified that mainline ballast was required adjacent to switch number one "[f]or the water drainage and the support."

After a hearing and consideration of "the parties' arguments, the record in this case, and the law,"[6] the trial court summarily granted COG's motion. Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[7] In reviewing the grant of a motion for summary judgment, we apply a de novo standard of review, and we view the

---

[5] According to Henry, cars of a departing train could travel as fast as 49 miles per hour.

[6] The appellate record does not contain a transcript of the hearing on motion for summary judgment.

[7] See OCGA § 9-11-56 (c).

evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[8]

1. Norris contends that the trial court erred in determining that his FELA claim was precluded.

FELA allows a railroad employee to sue his or her railroad employer to recover damages for injuries resulting from the negligence of the railroad employer.[9] "FELA imposes on railroads a general duty to provide a safe workplace"[10] so as to effectuate Congress's intent to promote railroad safety.[11] "As a general negligence statute, FELA neither prohibits nor requires specific conduct by a railroad."[12]

The purpose of the FRSA is "to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents."[13] The FRSA charges, "The Secretary of Transportation, as necessary, shall prescribe regulations and issue orders for every area of railway safety. . . ."[14] The FRSA provides that railroad safety regulations "shall be nationally uniform to the extent practicable."[15] The FRSA contains express terms about preemption, providing that a state may adopt or enforce any law, regulation, or order related to railroad safety until the Secretary of Transportation "prescribes a regulation or issues an order *covering* the subject matter of the State requirement."[16] Accordingly, preemption lies where such federal regulation "substantially subsume[s] the subject matter of the relevant state law" and does not merely "touch upon" or "relate to" that subject matter.[17]

This case presents the interaction of two federal statutes — the FELA and the FRSA. This court and others have concluded that the FRSA may preclude a FELA claim under an analysis that FELA is a negligence-based statute, and like state common law negligence claims, FELA negligence claims may not be used to impose duties

---

[8] *CSX Transp. v. Deen*, 269 Ga. App. 641 (605 SE2d 50) (2004).

[9] 45 USC § 51 (pertinently provided that "[e]very common carrier by railroad while engaging in commerce . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce").

[10] *Waymire v. Norfolk and Western R. Co.*, 218 F3d 773, 775 (7th Cir. 2000) (citation and punctuation omitted).

[11] See *Consolidated Rail Corp. v. Gottshall Consolidated Rail Corp.*, 512 U. S. 532, 542-544 (114 SC 2396, 129 LE2d 427) (1994).

[12] *Waymire*, supra.

[13] 49 USC § 20101.

[14] 49 USC § 20103.

[15] 49 USC § 20106.

[16] Id. (emphasis supplied); see *CSX Transp. v. Easterwood*, 507 U. S. 658, 673-676 (113 SC 1732, 123 LE2d 387) (1993).

[17] *Norfolk Southern R. Co. v. Shanklin*, 529 U. S. 344, 352 (120 SC 1467, 146 LE2d 374 (2000) (citations and punctuation omitted).

beyond those imposed by Congress or the FRA.[18] In addition, this court and others have reached the same conclusion based on the policy embodied in the FRSA to ensure uniformity in law relating to railway safety.[19] We adhere to these principles in answering the question whether COG can be liable in this FELA action contesting the use of mainline ballast, where such action complied with requirements promulgated pursuant to the FRSA.

Norris does not argue that the use of mainline ballast failed to satisfy 49 CFR § 213.103. Rather, he asserts that the regulation does not specify any particular size of ballast, and therefore, a jury should be allowed to decide whether smaller ballast should have been used, as Bowden opined. According to Bowden, the cited regulation would not have been offended had COG used yard ballast on top of the mainline ballast. Alternatively, Bowden asserted that the use of yard ballast alone would have satisfied the regulation.

To the extent that Norris's FELA claim rests upon different ways by which COG might have supported the mainline track to comply with 49 CFR § 213.103, the negligence claim is precluded. The fact that the regulation does not specify any size for the various purposes of the ballast does not alter the fact that the regulation nonetheless "covers" or "substantially subsumes" the subject matter of a ballast selection relative to track maintenance.[20] "[T]o allow various state juries to second-guess the actions of an interstate railroad which has complied with federally-mandated design standards would undermine Congress's goal of uniform, federal railroad regulation."[21] Contrary to Norris's contention, his FELA claim presents nothing for a jury to decide on this issue.[22]

---

[18] See, e.g., *Key v. Norfolk Southern R. Co.*, 228 Ga. App. 305 (491 SE2d 511) (1997); *Waymire*, supra at 776.

[19] See, e.g., *Key*, supra; *Waymire*, supra at 776-777 (holding that "in order to uphold FRSA's goal of uniformity," the FRSA supersedes FELA where the train's speed and warning devices complied with the FRSA); *Thirkill v. J. B. Hunt Transp.*, 950 FSupp. 1105, 1107-1108 (N.D. Ala. 1996) (holding that where train speed and locomotive design complied with federal regulations, railroad employee's FELA claims were preempted by the FRSA since "Congress has established a policy of national uniformity of laws, rules, regulations, orders and standards"); cf. *Earwood v. Norfolk Southern R. Co.*, 845 FSupp. 880 (N.D. Ga. 1993).

[20] See generally *Tufariello v. Long Island R. Co.*, 364 FSupp.2d 252, 259-260 (E.D. N.Y. 2005) (applicability of preemption provision in the FRSA was not altered where federal regulation concerning locomotive horns set a minimum level but did not specify a maximum level).

[21] *Key*, supra at 307 (citation and punctuation omitted).

[22] See id. (where locomotive steps were designed in accordance with regulation issued by the FRA pertaining to construction of locomotive steps, plaintiff's FELA claim that locomotive steps were negligently designed was precluded); see generally *Missouri Pacific R. Co. v. R. Comm. of Texas*, 948 F2d 179, 181 (5th Cir. 1991) (determining that a state regulation providing for the construction of walkways "alongside railroad tracks" would be preempted by FRSA if the

2. Next, Norris argues that the ballast "in the location about which [he] complains" does not support the mainline track.

Essentially, Norris seeks to place the ballast upon which he stumbled outside the purview of 49 CFR § 213.103. This regulation governs ballast relative to track support, but not necessarily other ballast within a rail yard.

(a) In an attempt to support this contention, Norris cites Bowden's testimony that yard ballast should have been

> used out at the ends of the switch ties. The ends of the switch ties are well away from the primary load bearing track support and thus the use of smaller rock, even if it was inadequate to support mainline which it clearly is not, would have no effect on the integrity of the track support system. The smaller rock would merely be placed on top of the larger support rock.

These statements do not place the ballast upon which Norris stumbled outside the purview of the regulation. Read within context, the statements were in support of Bowden's assertion that the use of yard ballast only as a surfacing material "would not [have] offend[ed] applicable FRA regulations."

Thus, Bowden's cited testimony fails to show that the ballast at issue was not subject to the federal regulation. To the extent that Norris's FELA claim rests upon this testimony, Norris has failed to show that the trial court erred in determining that his claim was precluded.

(b) Norris next attempts to support this contention by citing to this excerpt of Henry's deposition:

> Q: The rock adjacent to this switch, does it support the mainline, or does it mostly provide a working surface for the Railroad worker operating the switch?
> A: It does not support the mainline; it supports the mechanism attached to it and — what was the rest of your question?
> Q: Well, I think you answered it. . . .

The ballast regulation sets out four categories of "support," and examination of the entirety of Henry's testimony makes clear that the testimony isolated here did not refer to them all. For example, Henry

state walkways would have required modifications to the track roadbed beyond federal requirements).

was specifically asked whether yard ballast could be used in the "area around switch stands where employees are going to be throwing switches." He answered no, explaining that the smaller ballast would create mud, that this mud would "work right on into the switch," and that this circumstance would cause problems with drainage and train safety.

Thus, Henry's testimony cited here fails to show that ballast adjacent to switch number one was not subject to the federal regulation. To the extent that Norris's FELA claim rests upon this testimony, Norris has failed to show that the trial court erred in determining that his claim was precluded.

(c) Finally, even assuming that there was ballast "out at the ends of the switch ties" or ballast "adjacent" to switch number one that was not subject to 49 CFR § 213.103 because the ballast located there was not necessary for any purpose set forth by the regulation, Norris has failed to cite evidence showing that his stumble occurred there. In briefs to this court and to the trial court, Norris described the underlying incident with citations to his deposition testimony. But he did not include the deposition transcript in the appellate record.[23] Furthermore, Norris has made no claim that any person witnessed his stumble. And although he attached to Bowden's affidavit a photograph to "illustrate" the area encompassing switch number one, Norris has identified within the scene neither the location of the ballast that he claims does not support the track pursuant to 49 CFR § 213.103 nor the place where he claims to have stumbled.[24]

On appeal, the party alleging error must show it "affirmatively by the record."[25] Where a transcript is necessary for appellate review and the appellant omits it from the appellate record, the appellate court must assume the judgment below was correct and affirm.[26] Without the transcript of Norris's account of the incident, we are unable to find merit in his contention that the ballast where he was injured was not subject to 49 CFR § 213.103.

*Judgment affirmed. Ruffin, C. J., and Smith, P. J., concur.*

---

[23] At oral argument in this case, when this court advised Norris's attorney of this omission from the appellate record, Norris's attorney responded that this appeal did not rely upon Norris's deposition testimony, but upon Bowden's testimony.

[24] Citing Norris's deposition, COG claims in its appellate brief, "It is undisputed that the incident occurred along Central of Georgia's mainline track."

[25] *Rice v. Baker*, 264 Ga. App. 704 (1) (592 SE2d 186) (2003).

[26] Id.

DECIDED JULY 12, 2006 —
RECONSIDERATION DENIED JULY 28, 2006

*Warshauer, Thomas, Thornton & Rogers, Michael J. Warshauer, Lyle G. Warshauer*, for appellant.

*Hall, Bloch, Garland & Meyer, John E. Hall IV, John F. Kennedy, Franklin, Taulbee, Rushing, Snipes & Marsh, Daniel B. Snipes*, for appellee.