# FOURTH DIVISION
## DILLARD, C. J.,
## DOYLE, P. J., and MERCIER, J.

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 26, 2018**

# In the Court of Appeals of Georgia

A18A0314, A18A0315. HARTRY et al. v. RON JOHNSON JR.    DO-011
     ENTERPRISES, INC. et al., and vice versa.           DO-012

DOYLE, Presiding Judge.

These appeals arise from a collision between a train, operated by Winford Hartry, and a tractor-trailer truck, owned by Ron Johnson Jr. Enterprises ("Johnson"), after its truck driver drove through a railroad grade crossing while the crossing's warning arms were down. Hartry and his wife sued Johnson, alleging claims of negligence, loss of consortium, bad faith, and punitive damages, and they brought claims against Norfolk Southern Railway Company ("NS") under the Federal Employers Liability Act ("FELA").[1] The Hartrys' complaint raised several FELA

---

[1] 45 USC § 51 et seq. The Hartrys also included claims against Columbia National Insurance Company, but that party was dismissed voluntarily and is not a party to this appeal.

violations, but they eventually withdrew all but their claim that NS was responsible for maintaining the crossing gates, which dangerously malfunctioned, resulting in NS's failure to provide Hartry with a reasonably safe place to work.

NS moved for summary judgment, which the trial court granted on the basis that Hartry's FELA claim was precluded by regulations[2] promulgated under the Federal Railroad Safety Act ("FRSA")[3] by the Federal Railroad Authority ("FRA"). Thereafter, the case proceeded to a jury trial in which the jury returned a verdict for the Hartrys.

In Case No. A18A0314, the Hartrys appeal, arguing that the trial court erred by (1) granting summary judgment to NS after determining that his FELA claim was precluded by FRA regulations and that no question of fact existed as to whether NS had notice of a gate malfunction; and (2) failing to give requested jury instructions informing the jury that Johnson had the burden of proof for its affirmative defense of mitigation of damages. In Case No. A18A0315, Johnson appeals, arguing that the trial court erred by (3) granting the Hartrys' motion to exclude certain expert testimony; (4) granting the Hartrys' motion for a directed verdict as to Johnson's

---

[2] 49 CFR § 200 et seq.

[3] 49 USC §§ 20101-20168.

2

breach of duty; and (5) prohibiting apportionment of fault to NS under OCGA § 51-12-33. For the reasons that follow, we reverse the trial court's grant of summary judgment to NS and directed verdict as to Johnson.

The record shows that on June 16, 2010, crossing gates were down at a public railway-roadway crossing, which position normally indicates that a train is approaching the crossing; occasionally gates will be down if a railway is performing maintenance or if they are malfunctioning.[4] As Johnson approached the railroad crossing driving his 28-foot long truck with attached dumpster, he saw that the gates were down but cars were driving around the gates and over the crossing. Johnson followed suit, driving around the crossing gates into the path of an oncoming train on which Hartry was serving as engineer. Hartry was injured as a result of the collision.

Witnesses in the area averred that the crossing gates were down by at least 9:00 a.m. on June 15, 2010 (the day before the accident), and because they were down

---

[4] To the extent that the cross-appeal implicates the jury verdict, we review the record to determine whether there is any evidence to support the verdict. *Central of Ga. R. Co. v. Ross*, 342 Ga. App. 27, 29 (1) (802 SE2d 336) (2017). To the extent that we review the summary judgment order, "we construe the evidence most favorably towards the nonmoving party, who is given the benefit of all reasonable doubts and possible inferences. And because summary judgment is a matter of law, we review the issue de novo." (Punctuation and citations omitted.) *Norfolk Southern R. v. Zeagler*, 293 Ga. 582, 583 (1) (a) (748 SE2d 846) (2013).

without trains crossing, drivers were traversing the crossing despite the gates being down. A delivery driver averred that he had traversed the crossing at least 15 to 20 times over the course of June 15 and 16 while the gates were down and prior to the accident. Johnson had traversed the crossing in spite of the warning gates being down a number of times since 4:00 p.m. on June 15 without incident.

NS employees also worked in the area of the crossing on two occasions during the day on June 15 and were in the vicinity for several other hours of the day during which other witnesses testified that the gates were staying down and signaling without trains actually approaching during that time. The employees contended, however, that they did not witness any malfunctions.

*Case No. A18A0314*

1. The Hartrys and Johnson argue that the trial court erred by granting summary judgment to NS after determining that Hartry's FELA claims are precluded by the FRA regulations promulgated under the FRSA and because questions of fact exist as to whether NS had notice of the alleged gate malfunction.

(a) *Motion to dismiss the appeal*. As an initial matter, NS argues that the Hartrys' appeal from the trial court's grant of summary judgment as to NS should be dismissed because the Hartrys failed to appeal the order at the time it was entered, or

4

alternatively, because the Hartrys' notice of appeal failed to indicate that they appealed from the summary judgment order. We disagree.

(i) *Timeliness of the appeal*. The Georgia Supreme Court has held that "[t]he party against whom summary judgment was granted may appeal either after the grant of summary judgment or after the rendition of the final judgment. Therefore, when the losing party appeals after the rendition of the final judgment, the grant of summary judgment is still subject to appellate review."[5]

NS, however, argues that under Uniform Superior Court Rule ("USCR") 19.1 (C), this rule does not apply because after a case is transferred to another superior court,

> [i]f the basis of the motion is that a party necessary to the court's jurisdiction has been dismissed during or at the conclusion of the trial, the motion shall be made immediately and orally; any opposition shall be made orally. Should the motion to transfer be granted as to the remaining parties the claim against the party dismissed shall be severed, so that the order of dismissal will be final for purposes of appeal.[6]

---

[5] *Culwell v. Lomas & Nettleton Co.*, 242 Ga. 242, 243 (248 SE2d 641) (1978). See also *Perrett v. Sumner*, 286 Ga. App. 379, 380 (1) (649 SE2d 545) (2007).

[6] USCR 19.1 (C).

We do not read this rule as requiring a party to appeal immediately from a grant of summary judgment as to one party or risk losing the right to appeal, merely that a party could appeal from such an order at that time. In fact, USCR 19.1 (I) states that after transfer, "[t]he action thereafter shall continue in the transferee court as though initially commenced there." And the transferee court has the power to review, vacate, or reissue "[a]ny interlocutory or other order theretofore entered in the action."[7] Thus, the act of transferring the case did not require immediate appeal of the summary judgment order.[8]

(ii) *Sufficiency of the notice of appeal*. NS also argues that the Hartrys' notice of appeal precludes this Court from reaching the summary judgment order because

---

[7] USCR 19.1 (I). See *Edokpolor v. Grady Mem. Hosp.*, 302 Ga. 733, 735 n.1 (808 SE2d 653) (2017) ("[P]laintiffs *could have* immediately appealed the order that granted summary judgment . . . even though [another issue] remained pending. . . . But this entitlement did not preclude them from waiting to appeal until a final judgment was rendered.") (emphasis in original). See also *Culwell*, 242 Ga. at 243.

[8] Compare with *Jarallah v. Aetna Cas. &c.*, 199 Ga. App. 592, 593 (405 SE2d 510) (1991) ("Ordinarily, where a grant of summary judgment does not dispose of all of the issues in the case, it may be reviewed on appeal from the final judgment entered in the case as well as by direct appeal. . . . However, if the trial court does certify that the summary judgment is final and ripe for review under OCGA § 9-11-54 (b), the time for appeal begins to run.'") (citation and punctuation omitted). The summary judgment order in this case did not contain language indicating that it was "final and ripe for review," nor was it contained in the transfer order.

the notice contains language limiting the orders appealed to the final judgment "plus other interlocutory orders and rulings that were not ripe for appeal until Final Judgment was entered." But this language actually is open ended and non-specific — the appellants did not list orders entered on particular dates or limit orders appealed based on the subject matter therein; therefore, we do not read it to preclude our review of the order.[9]

Accordingly, NS's motion to dismiss the appeal is hereby denied.

(b) *Summary judgment*. We now turn to the substance of the summary judgment motion. We agree with the Hartrys and Johnson that the trial court erred by determining that the Hartrys' FELA claims against NS were precluded by the FRSA as implemented by the FRA in its regulations and by determining that questions of fact did not exist as to his claims.

"[FELA] is a federal statute that gives a railroad employee the right to sue his employer in state or federal court for injury or death resulting in whole or in part from the railroad company's negligence [wherein] a plaintiff must 'prove the traditional

---

[9] Compare with *Southwest Health & Wellness v. Work*, 282 Ga. App. 619, 622 (1) (a) (639 SE2d 570) (2006) (holding that the appellants' designation within the notice of appeal as an order entered on a specific date regarding a specific issue precluded this Court's review of other orders entered in the case).

7

common law elements of negligence: duty, breach, foreseeability, and causation.'"[10]

FELA "should be 'liberally construed' in favor of injured railroad employees in order to further its 'remedial goal' and 'humanitarian purposes.'"[11]

Generally speaking,

[u]nder FELA, [a railroad company] has a duty to use reasonable care in furnishing its employees with a safe place to work. This duty requires the railroad to exercise the care that a reasonable and prudent person would exercise under the same circumstances. The carrier is required to take precautions commensurate with danger inherent in the situation and to exercise ordinary care proportionate to the consequences that might be reasonably anticipated from neglect. And what particular action a railroad should take to address a given workplace hazard is a question of whether the railroad breached the standard of care, which is a question for the jury.[12]

(ii) *FELA claim preclusion.* Before the trial court, Hartry argued that NS had a duty under FELA to maintain the grade crossing, and its failure to do so resulted in his injuries. NS argued that its duty was controlled by 49 CFR § 234.107 promulgated

---

[10] (Punctuation omitted.) *Zeagler*, 293 Ga. at 586 (2).

[11] Id. at 596 (2) (e), quoting *Consolidated Rail Corp. v. Gottshall*, 512 U. S. 532, 542-543 (II) (A) (114 SCt 2396, 129 LE2d 427) (1994).

[12] (Citations and punctuation omitted.) *Ross*, 342 Ga. App. at 29-30 (1).

8

by the FRA under the FRSA, which laid out the actions to be taken after a railway received a "credible report" of a crossing malfunction and that because there was no "credible report" of a crossing malfunction as defined under that regulation, Hartry's FELA claim was precluded. NS is correct that many state and federal courts previously had determined that claims brought pursuant to FELA were precluded by FRA regulations promulgated under FRSA.[13] Indeed, our prior precedent held that a FELA "claim would be precluded if [a railway] established that a FRSA regulation or set of regulations '"substantially subsume[d]" the subject matter' of the FELA claim."[14]

In *POM Wonderful LLC v. Coca-Cola Co.*,[15] the United States Supreme Court addressed the issue of claim preclusion in the face of two federal statutory schemes, noting that multiple tests had been employed by courts across the country to

---

[13] See *Zeagler*, 293 Ga. at 598 (3) (b). See, e.g., *Norris v. Central of Ga. R.*, 280 Ga. App. 792, 794-795 (1) (635 SE2d 179) (2006); *Waymire v Norfolk &c.*, 218 F3d 773 (7th Cir. 2000), applying *CSX Transp. v. Easterwood*, 507 U. S. 658 (113 SCt 1732, 123 LE2d 387) (1993). But see 49 USC § 20106 (b) (2010) (clarifying that state law claims for railway accidents are not preempted as long as the state law is not "incompatible" with federal regulations).

[14] *Zeagler*, 293 Ga. at 598 (3) (b). See also *Norris*, 280 Ga. App. at 794-795 (1).

[15] ___ U. S. ___, ___ (II) (A) (134 SCt 2228, 2236, 189 LE2d 141) (2014).

9

determine such a question.[16] The Court explained that when a court determines whether a claim under one federal statute is precluded[17] from proceedings by another federal statute, a court should apply a two-part inquiry. First, a court must look to the express language of the statutory provisions and determine if Congress expressly intended preclusion.[18] If no express provision is found, courts must apply "traditional rules of statutory interpretation" to determine if one statute precludes a claim raised under another statute.[19] The Court explained that if two statutes complement each other, then claims under one statute would not be precluded by the existence of regulations under another and to hold otherwise would vitiate Congressional intent.[20]

---

[16] See id. at __ (II) (A) (134 SCt at 2236-2237) (declining to apply the "irreconcilable conflict," standard and also declining to simply apply the more specific law over the provisions of the more general law). See also *Zeagler*, 293 Ga. at 598-599 (3) (b) (applying neither the "substantially subsumes" approach nor the "intolerable conflict approach").

[17] Over the years, courts have conflated the concepts of preemption and preclusion. The distinction was clarified by Justice Nahmias in *Zeagler*, 293 Ga. at 598 (3) (a).

[18] *Pom Wonderful*, ___ U. S. at ___ (II) (B) (134 SCt at 2237).

[19] See id. at ___ (II) (A) (134 SCt at 2236).

[20] See id. at ___ (II) (B) (134 SCt at 2238).

Since the U.S. Supreme Court's decision in *Pom Wonderful*, many courts have diverged from prior precedent and held that employees bringing claims under FELA are not necessarily precluded in the event that the subject matter of the claims is also regulated under FRSA.[21] And although it was decided prior to *Pom Wonderful*, the Georgia Supreme Court in *Norfolk Southern R. v. Zeagler*, resolved a similar preclusion argument in much the same way as the U.S. Supreme Court, holding that the regulations at issue did not cover employee safety training, and therefore, the employee's failure-to-train claim under FELA was not precluded by the regulations.[22]

Turning to the FRA regulations, the scope of this portion of the FRSA states that

> [t]his part prescribes *minimum* (1) [m]aintenance, inspection, and testing standards for highway-rail grade crossing warning systems; (2) [s]tandards for the reporting of failures of highway-rail grade crossing

---

[21] See, e.g., *Fair v. BNSF R. Co.*, 238 Cal. App. 4th 269, 286-289 (189 CalR3d 150) (2015) ("If Congress had concluded that FELA suits would interfere with the operation of FRSA, it could have enacted a provision addressing the issue during these statutes' 45 years of co-existence."). See also *Madden v. Antonov*, 156 FSupp. 3d 1011 (DC Neb 2015); *Henderson v. Amtrak*, 87 FSupp. 3d 610, 620-621 (II) (B) (SDNY 2015); *Hananburgh v. Metro-North Commuter R.*, 2015 US Dist LEXIS 34008 (SDNY 2015); *Cottles v. Norfolk Southern R. Co.*, 224 So. 3d 572 (Ala. 2017); *Noice v BNSF R. Co.*, 383 P3d 761, 766-771 (D), (E) (NM 2016).

[22] *Zeagler*, 293 Ga. at 598-601 (3) (b) & (3) (c).

warning systems and for the actions that railroads must take when such systems malfunction; . . . (4) [r]equirements that certain railroads establish systems for receiving toll-free telephone calls reporting various unsafe conditions at highway-rail grade crossings and pathway grade crossings, and for taking certain actions in response to those calls; and (5) [r]equirements for reporting to, and periodically updating information contained in, the U.S. DOT National Highway-Rail Crossing Inventory for highway-rail and pathway crossings.[23]

This section goes on to state that "[t]his part does not restrict a railroad from adopting and enforcing additional or more stringent requirements not inconsistent with this part."[24] The regulations contain a number of subsections related to reports of signal failures,[25] accidents,[26] and plans of action[27] responses that railroads are required to take in response to certain issues,[28] like false activation of signals,[29] maintenance

---

[23] (Emphasis supplied.) 49 CFR § 234.1 (a).

[24] 49 CFR § 234.1 (b).

[25] 49 CFR § 234.9.

[26] 49 CFR § 234.7.

[27] 49 CFR § 234.11.

[28] 49 CFR §§ 234.101 to 234.109.

[29] 49 CFR § 234.107.

standards for various parts of the signals,[30] and certain signal inspections and tests.[31] The particular section at issue in this case deals with false activations of warning systems at grade crossings. It reads:

> Upon receipt of a credible report[32] of a false activation, a railroad having maintenance responsibility for the highway-rail grade crossing warning system shall promptly initiate efforts to warn highway users and railroad employees at the crossing by taking the following actions:
>
> (a) Prior to a train's arrival at the crossing, notify the train crew of the report of false activation and notify any other railroads operating over the crossing;
>
> (b) Notify the law enforcement agency having jurisdiction over the crossing . . . or railroad police capable of responding and controlling vehicular traffic; and

---

[30] 49 CFR §§ 234.201 to 234.245.

[31] 49 CFR §§ 234.247 to 234.273.

[32] "Credible report of warning system malfunction or credible report of warning system malfunction at a highway-rail grade crossing means a report that contains specific information regarding a malfunction of a highway-rail grade crossing warning system at an identified highway- rail grade crossing, supplied by a railroad employee, law enforcement officer, highway traffic official, or other employee of a public agency acting in an official capacity." 49 CFR § 234.5.

(c) Provide for alternative means of actively warning highway users of approaching trains, consistent with the following requirements (see Appendix B for a summary chart of alternative means of warning).

(1) (i) If an appropriately equipped flagger is providing warning for each direction of highway traffic, trains may proceed through the crossing at normal speed.

(ii) If at least one uniformed law enforcement officer (including a railroad police officer) provides warning to highway traffic at the crossing, trains may proceed through the crossing at normal speed.

(2) If there is not an appropriately equipped flagger providing warning for each direction of highway traffic, or if there is not at least one uniformed law enforcement officer providing warning, trains with the locomotive or cab car leading, may proceed with caution through the crossing at a speed not exceeding 15 miles per hour. Normal speed may be resumed after the locomotive has passed through the crossing. In the case of a shoving move, a crewmember shall be on the ground to flag the train through the crossing.

(3) In lieu of complying with paragraphs (c) (1) or (2) of this section, a railroad may temporarily take the warning system out of service if the railroad complies with all requirements of § 234.105, 'Activation failure.'

(d) A locomotive's audible warning device shall be activated in accordance with railroad rules regarding the approach to a grade crossing.[33]

Applying the two-part test set forth in *Pom Wonderful*, Hartry's FELA claim is not precluded by these FRA regulations.[34] The plain language of the regulation directs a railway to take certain action in the event that it receives a credible report about a false activation — a minimum requirement as specifically stated in 49 CFR § 234.1 (b). It does not limit railway liability to its employee in the event that a railway was or should have been aware of a malfunction, which is what Hartry claims occurred in this case.

> FELA has been liberally construed to further Congress' remedial goal of holding railroads responsible for the physical dangers to which their employees are exposed. As the Supreme Court explained in *Gottshall*: . . . when considering § 51, when Congress enacted FELA in 1908, its attention was focused primarily upon injuries and death resulting from accidents on interstate railroads. Cognizant of the physical dangers of railroading that resulted in the death or maiming of thousands of workers every year, Congress crafted a federal remedy that

---

[33] 49 CFR § 234.107.

[34] See *Zeagler*, 293 Ga. at 599 (3) (b).

15

shifted part of the human overhead of doing business from employees to their employers.[35]

NS urges this Court to find that the regulation precludes FELA claims based on failure to maintain a signal crossing because by enacting FRSA, Congress intended uniformity among the states. NS maintains that if such FELA claims are allowed in this area, railroads will face different applications of the law throughout the country. The Georgia Supreme Court in *Zeagler*[36] found this same argument unpersuasive, as did the U.S. Supreme Court in *Pom Wonderful*, which instructed courts instead to interpret the meaning of the two federal statutes rather than striving for uniformity by finding one statute precluded.[37] Although touching different acts, as the Court explained in *Pom Wonderful*,

---

[35] (Punctuation and citations omitted.) *Wheeler v. CSX Transp., Inc.*, No. 3:14CV2689 at *14-15 (2017 U. S. Dist. LEXIS 114059) (ND Ohio 2017), quoting *Gottshall*, 512 U. S. at 543 (II) (A); *Urie v. Thompson*, 337 U. S. 163, 181 (II) (69 SCt 1018, 93 LEd 1282) (1949); citing *Wilkerson v. McCarthy*, 336 U. S. 53, 68, (69 SCt 413, 93 LEd 497) (1949) (Douglas, J., concurring) ("[FELA] 'was designed to put on the railroad industry some of the cost for the legs, eyes, arms, and lives which it consumed in its operations'"); *Tiller v. Atlantic Coast Line R. Co.*, 318 U. S. 54, 58 (63 SCt 444, 87 LEd 610) (1943).

[36] 293 Ga. at 600 (3) (B).

[37] See *Pom Wonderful*, __ U. S. at ___ (II) (C) (134 SCt at 2239-2240).

the application of a federal statute such as [FELA] by judges and juries in courts throughout the country may give rise to some variation in outcome, [but] this is the means Congress chose to enforce a national policy to ensure [the protection of railroad workers]. It is quite different from the disuniformity that would arise from the multitude of state laws, state regulations, state administrative agency rulings, and state-court decisions that are partially forbidden by [FRSA]'s pre-emption provision.[38]

Another court approached it by comparing

(1) the effect on FRSA of allowing FELA claims to continue with (2) the effect on FELA of giving FRSA a preclusive effect. Allowing FELA claims to continue is a mixed bag from the perspective of FRSA — it will further safety but at some expense to uniformity. On the other hand, the purpose of FELA is solely to promote the safety of railroad workers, and allowing FRSA to preclude FELA claims would work unmitigated harm on that purpose, by leaving injured workers with no recourse against their employer and insulating broad categories of potentially negligent conduct from any accountability.[39]

---

[38] Id. See also *Wheeler*, No. 3:14CV2689 at *33 (2017 U.S. Dist. LEXIS 114059) (applying *Pom Wonderful* analysis to a FELA claim that the railway argued was precluded by the Federal Locomotive Inspection Act); *Henderson*, 87 FSupp. 3d at 620-621 (II) (B).

[39] *Madden*, 156 FSupp. 3d at 1021 (III) (A). See also *Wheeler*, No. 3:14CV2689 at *25 (2017 U.S. Dist. LEXIS 114059).

In the case of FELA claims, although outcomes may differ based on the inherent facts of each case, the national standard governed by that cause of action will prevent the issue NS fears.[40]

(ii) *Fact Questions*. NS also argues that even if we determine that FRSA did not preclude Hartry's FELA claim, summary judgment was still proper because there was no evidence to create a question of fact as to whether NS had actual knowledge of the malfunction, if any. The trial court's ruling in this regard is both a misapplication of the law based on its determination that the actual knowledge standard of the FRA regulation created the only duty for which NS could be liable and an impermissible determination of a question of fact based on competing testimony in the record regarding whether the crossing arms were malfunctioning and for what length of time.[41]

> Under FELA, a railroad has a duty to use reasonable care in furnishing its employees with a safe place to work. . . . A railroad's duty to provide a safe workplace for its employees requires it to exercise the care that a reasonable and prudent person would exercise under the same circumstances. . . . Whether the railroad breached that duty in a given

---

[40] See *Zeagler*, 293 Ga. at 600 (3) (B).

[41] See *Zeagler*, 293 Ga. at 587 n.4.

case by failing to act with the degree of care required in a specific situation is a separate question.[42]

"The other three elements — foreseeability, breach, and causation — are questions of fact to be decided by a jury, assuming that there is evidence in the record creating a genuine issue for trial."[43] Here, the evidence shows that the truck driver testified that he went over the crossing while the malfunctioning gate was down at least 4 times prior to the accident, and another driver averred that he traversed the crossing between 15 and 20 times prior to the accident while the gate was down. Additionally, other witnesses testified that the gates had been down since the day before the accident, even though no trains were traversing the crossing. Although NS employees working at the crossing testified that the warning gates were not malfunctioning, this testimony simply created a question of fact for a jury to resolve based on the credibility of the witnesses.[44] It is not the case, as NS urges, that the NS employee's

---

[42] (Citations and punctuation omitted.) Id. at 587-588 (2) (a).

[43] (Emphasis omitted.) Id. at 586 (2). See also *Ga. Southern &c. v. Peters*, 284 Ga. App. 139, 145 (2) (643 SE2d 786) (2007) ("Although the meaning of reasonable foreseeability under FELA 'remains somewhat elusive and abstract,' it equates with 'notice, either actual or constructive.'").

[44] See *Zeagler*, 293 Ga. at 596-597 (2) (e).

19

testimony is "direct evidence" that trumps the testimony of other witnesses. Thus, as the evidence stood prior to the grant of summary judgment, there was a question of fact as to whether NS breached its duty to provide Hartry with a reasonably safe working environment, including protecting him from collisions at grade crossings.[45]

2. The Hartrys also argue that the trial court erred by failing to give their requested jury instruction on burden of proof as to Johnson's affirmative defense of mitigation of damages.

Although Johnson elicited a number of pieces of evidence from the doctors and Hartry that he was cleared to return to work much sooner than he did, after our review of the testimony and argument presented by Johnson, we agree that Johnson did not elicit testimony or argue that Hartry had a duty to mitigate his damages, but instead, attacked the veracity of Hartry's claims that his psychological and physical injuries were caused by the accident. Moreover, the court did not charge the jury that Hartry

---

[45] See id. at 591-592 (2) (a). See also *Strickland v. Norfolk Southern R.*, 692 F3d 1151, 1154 (I) (11th Cir. 2012) (reviewing a FELA case and explaining that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether . . . ruling on a motion for summary judgment or for a directed verdict.").

had a duty to mitigate his damages in the first place.[46] Accordingly, it was not error for the trial court to decline to charge the jury on this issue.[47]

3. NS's Motion to Strike Reply Brief is hereby denied as moot.

*Case No. A18A0315*

4. Johnson argues in its cross-appeal[48] that the trial court erred (a) by granting the Hartrys' motion for a directed verdict as to Johnson's breach of duty, (b) by prohibiting apportionment of fault to NS under OCGA § 51-12-33, and (c) by granting the Hartrys' motions to exclude the expert testimony of Dr. Torrence Welch and David Nelson.

---

[46] See *Glenn McClendon Trucking Co. v. Williams*, 183 Ga. App. 508, 512 (6) (359 SE2d 351) (1987), quoting *Nat. Health Svcs. v. Townsend*, 130 Ga. App. 700, 703 (3) (204 SE2d 299) (1974).

[47] See *Williams*, 183 Ga. App. at 512 (6) (holding that because there was no testimony that disregarding a doctor's order caused portions of the plaintiff's damages, the trial court did not err by denying the request to charge on mitigation of damages). Compare with *Jones v. Sperau*, 275 Ga. 213, 214 (2) (563 SE2d 863) (2002).

[48] Johnson characterized its cross-appeal as conditional, seeking to address alleged errors in the trial "if the judgment against [Johnson] is affirmed despite Plaintiffs' appeal." Nonetheless, in light of the reversal of summary judgment in favor of NS, there must be a new trial, so we address Johnson's cross-appeal.

(a) *Directed verdict as to Johnson's breach of duty*. Johnson argues that the trial court incorrectly directed a verdict in favor of the Hartrys as to its driver's breach of duty, particularly in light of NS's erroneous absence as a defendant at trial.

In this case, retrial of both defendants is necessary because the omission of NS during the trial against Johnson resulted in indivisible errors to that judgment.[49] For instance, during the trial, Johnson was precluded from arguing that NS's conduct was responsible for the collision that injured Hartry, for example by inducing its driver to believe that the crossing gates were down in error and that a train was not coming. Thus, it was not able to point to evidence that the driver's action of bypassing the malfunctioning crossing gate was reasonable under the circumstances.[50] As noted

_____

[49] See *Martin v. Six Flags Over Ga. II*, 301 Ga. 323, 338 (III) (801 SE2d 24) (2017) ("[If] a judgment is entire and indivisible, it [cannot] be affirmed in part and reversed in part, but the whole must be set aside if there is reversible error therein. But [if] a judgment appealed from can be segregated, so that the correct portions can be separated from the erroneous, the court will not set aside the entire judgment, but only that portion which is erroneous.") (punctuation omitted).

[50] Although inapplicable to the issue of Johnson's breach of duty, it remains for a single jury to apply the separate causation standard of common law negligence as compared to the causation standard under FELA and the appropriate damages, if any, available to Hartry pursuant to each cause of action. See *CSX Transp. Inc. v. McBride*, 564 U. S. 685, 700-705 (III) (131 SCt 2630, 180 LE2d 637) (2011) (explaining the different standard of proximate cause under state common law tort standards as compared to that under FELA, the proper instruction for which is that "a defendant railroad caused or contributed to a railroad worker's injury if the

22

above, NS was not entitled to summary judgment, and it remains a defendant on retrial. Accordingly, the merit of any directed verdict motion as to Johnson will need to be evaluated based on the evidence presented with NS as a defendant, and we reverse the grant of the Hartrys' motion for a directed verdict as to Johnson's breach of duty.

(b) *Prohibiting apportionment to NS*. Under what theory, if any, the defendants will be mututally responsible for any damages awarded shall be determined upon retrial.[51]

(c) *Exclusion of expert testimony*. Johnson argues that the trial court erred by granting the Hartrys' motions to exclude the expert testimony of Dr. Torrence Welch and David Nelson. The trial court did not issue detailed written orders excluding these experts, but our review of the record reveals no abuse of discretion on the part

---

railroad's negligence played a part — no matter how small — in bringing about the injury") (punctuation omitted).

[51] See, e.g., *City of Gainesville v. Dodd*, 275 Ga. 834, 837-838 (537 SE2d 369) (2002) ("[A]n appellate court is, among other things, a court for the correction of errors of law. An error of law has as its basis a specific ruling made by the trial court. There having been no rulings by the trial court on the issues raised [on appeal], there are no rulings to review for legal error.") (citations and punctuation omitted).

of the trial court by excluding the testimony of Welch[52] and Nelson.[53] Nevertheless, on retrial with the addition of NS, the evidence may differ, and the admission of expert testimony is subject to a proper exercise of the trial court's discretion.[54]

*Judgment reversed. Dillard, C. J., and Mercier, J., concur.*

---

[52] See, e.g., *Bowers v. Norfolk Southern Corp.*, 537 FSupp2d 1343, 1377 (MD Ga. 2007) ("In the context of litigation, therefore, biomechanical engineers typically are found to be qualified to render an opinion as to the forces generated in a particular accident and the general types of injuries those forces may generate. However, biomechanical engineers ordinarily are not permitted to give opinions about the 'precise cause of a specific injury.'") (citations omitted).

[53] See id. at 1371-1372 ("Expert testimony may be admitted into evidence under Rule 702 only if 'the expert is qualified to testify competently regarding the matters he intends to address. . . .'") (punctuation omitted).

[54] See *An v. Active Pest Control South, Inc.*, 313 Ga. App. 110, 111 (720 SE2d 222) (2011) ("Whether the opinions of the experts are admissible . . . is something that must be determined in the first instance by the court below, exercising its discretion under OCGA § [24-7-702].").